INHABITANTS OF HYDE PARK *vs.* COUNTY COMMISSIONERS OF NORFOLK.

Norfolk.   Jan. 27. — March 1, 1875.   AMES & ENDICOTT, JJ., absent.

Where an ancient highway extends entirely through a town, a petition to the county commissioners to relocate the same, which states that the highway, describing it by name, " is uncertain in several places and generally needs revision," sufficiently describes the termini of the relocation.

A petition to county commissioners, praying them to "view and relocate" a certain highway, is sufficient to enable them to act under the Gen. Sts. *c.* 43, § 12, which authorizes them, upon petition, to "locate anew" a highway.

County commissioners, on a petition to them to " relocate" a highway, have authority to take land not before within the limits of the highway, and make such changes in grade as are incidental to changes in course and width.

An adjudication of county commissioners, reciting the prayer of a petition to them for the relocation of a highway, " that the public convenience and necessity require that said petition be granted," is a sufficient compliance with the provision of the Gen. Sts. *c.* 43, § 6. And an order upon this adjudication for a meeting at a time and place stated "to view and relocate" the highway, is a sufficient notice to all persons interested.

Where county commissioners, on a petition for the relocation of a highway, adjudge that the public convenience and necessity require that the petition should be granted, and order a second meeting, the notice of such order need not state which of the many things that might be done in the relocation they propose to do.

A petition to county commissioners for the relocation of a highway in a town, which is signed by five citizens thereof, is not invalid because three others, designating themselves as selectmen of the town, join in the petition without the authority of the town; and the fact that such selectmen have refused to call a meeting of the voters of the town to oppose proceedings under the petition, has no bearing on the question whether the proceedings of the commissioners, in locating anew the highway upon the petition, should be quashed.

An order of county commissioners, on a petition for the relocation of a highway, directed the completion of the new location by the town in three sections, within one, two and three years respectively, and provided that no entry under their proceedings should be made upon a certain portion of the road, except upon a supplementary order and return of the commissioners, which was never made. *Held,* that the modification as to a portion of the road had no effect upon the order as to the remainder.

Under the Gen. Sts. *c.* 43, § 12, the expenses of relocating a road within a town may be assessed upon the town.

PETITION for a writ of certiorari, filed November 18, 1874, the material allegations of which were as follows :

On October 23, 1874, the following petition, signed by five citizens of Hyde Park, and also by George E. Sherman, Rinaldo Williams, and J. Ellery Piper, describing themselves as selectmen of Hyde Park, was presented to the respondents : " To the honorable county commissioners of the county of Norfolk. The undersigned, selectmen, and others, citizens of Hyde Park, respectfully represent, that the location of River Street in said town is uncertain in several places, and generally needs revision. We therefore pray you to view said street, and relocate the same, as in your judgment the public necessity and convenience may require."

River Street was at this time a public highway, and had been laid out and used as such for one hundred years. The easterly terminus of the street was in the city of Boston, about two miles from the easterly boundary of Hyde Park, through which town it ran for three and a quarter miles, and ended in the town of Dedham, about a mile from the southwesterly boundary of

Hyde Park. It was known as River Street throughout its entire length.

On May 15, 1872, the commissioners, after notice, view and hearing, adjudged, by an order reciting the petition, " that the public convenience and necessity require that said petition be granted." Notice was duly given that the commissioners would, on June 20, 1872, at ten o'clock in the forenoon, meet at Hyde Park and " proceed to view and relocate said River Street, and estimate damages, if any, take such order in relation to said adjudication as by law they may be authorized to do."

On June 20, 1872, the commissioners proceeded to lay out and locate River Street by courses and distances, and metes and bounds, and in the order of location provided that " no entry shall be made, or possession taken under these proceedings, upon lands included in this location, between the terminus at the Boston city line and the southwesterly corner of the school-house property upon said River Street, except upon a further and supplementary order and return of the county commissioners, and after giving due notice to the parties interested." The order further provided that " the inhabitants of the town of Hyde Park, in which said way is located, do, within three years from the date of this return, complete said way as follows : between Hyde Park Avenue and Arlington Street, within one year ; between Arlington Street and Boston line, two years ; and between Hyde Park Avenue and Dedham line, three years ; " and assessed the expense of the widening upon the town of Hyde Park.

The petition further alleged that the commissioners did not relocate the lines of River Street, as prayed for in the petition; but in said location widened said street, and in many places along said street, for the distance of one mile, took land upon each side of the street, from ten feet to twelve feet outside the old location of said street as existing when said petition was filed, said land having never before been included within the location of said highway ; so that the land damages awarded by the commissioners to the proprietors of said land amount to about $7000 ; that the commissioners had ordered a change of grade in said street, and at some points had so materially changed the said street and deviated from the original location as in effect to locate a new street and discontinue the old one at such points.

The petition further alleged that on November 7, 1874, at a meeting of the inhabitants of Hyde Park, duly called, and in pursuance of an article in the warrant, a committee was appointed with full powers and instructions to avail themselves of all proper means, legal or otherwise, to protect the town against the decree ordering a relocation of River Street; that the committee appeared before the commissioners and admitted that no steps had been taken to do the work ordered to be done, and presented their objections to the proceedings, whereupon the commissioners ordered, on November 12, 1874, that the section of River Street between Hyde Park Avenue and Arlington Street be completed by the commissioners.

The reasons assigned in the petition for a writ of certiorari to quash these proceedings were as follows :

" 1. Because the petition upon which said location was made was defective, in that the termini of the street spoken of were not stated or described therein ; and the persons and corporations interested in having notice, could not tell by the petition within three miles where the new location was intended to be.

" 2. Because the defect alleged in the petition was an uncertainty in the old location, and a need of revision, and the prayer was for a relocation, and upon that petition the county commissioners had no authority to widen said street as aforesaid, and take land of abuttors thereon, which land had never been included within the location of said street.

" 3. Because upon said petition the county commissioners had no authority to construct at any point a new road, or materially change the course of the existing highway, or to order any change of grade.

" 4. Because the county commissioners exceeded the prayer and intention expressed in said petition in ordering the widening of said street and the said change of grade and direction.

" 5. Because no legal and sufficient notice has been given to the persons and corporations interested and entitled to notice, so that they might be present and be heard upon any question of the common convenience and necessity, requiring a widening or other alteration of said street, except to relocate or revise the lines thereof.

" 6. Because no sufficient notice was ever given the persons and corporations interested of the time, place and subject matter of the further view of the premises, (said by the return of said commissioners to have taken place June 20th, ᴀ. ᴅ. 1872.) No abstract of any petition was contained in said notice. And the commissioners had no authority to change the location or widen the street, as aforesaid, upon such notice.

" 7. Because the order of the commissioners, published with said second notice, was that they would proceed to further view the premises, and take such action in relation to said adjudication, as by law they might be authorized to do, but did not designate what of the many things the law allows them to do they intended to do, or upon which parties interested were to be heard.

" 8. Because said original petition purports to be by the selectmen of Hyde Park, and in fact the signers thereof describing themselves as selectmen, viz., Geo. E. Sherman, Rinaldo Williams and J. Ellery Piper, were the whole of the selectmen of said Hyde Park at that time ; but said selectmen had no authority whatever to make and present said petition in behalf of said town ; and they soon afterwards, when it became known to the citizens of Hyde Park that such action had been taken by them, persistently refused to call a meeting of the voters of said town to take action against said proceedings by them, although a proper petition was presented to them, calling for such meeting, and when a meeting was duly called, the said selectmen refused to insert an article in the warrant to take action against said petition. And your petitioners say that said Piper, Sherman and Williams admit that as selectmen they had no authority in the premises, and your petitioners aver that by describing themselves as selectmen, (although the requisite number of signers appear upon said petition,) they tended to mislead parties interested, and such petition and unauthorized use of their title tends to great injustice, and the petition is void for uncertainty as to who is the petitioner.

" 9. Because at three several places on said street, the said commissioners, in awarding damages to proprietors of land, have included in their estimation of damages lands which were within the old lines of the street, and for which such adjoining proprietors had no title or claim for damages.

" 10. Because in the location by the commissioners, they describe a new location of said street, from the southwesterly corner of the school-house property, so called, in Hyde Park, to the Boston city line. And they order that no entry be made or possession be taken under these proceedings of so much of said line, ' except upon a supplementary order and return of the commissioners; ' but nevertheless, your petitioners were ordered by said commissioners in said original return, and by no supplementary order, to build and complete said way between said points within two years from the date of said return, and the two years have nearly elapsed, and no supplementary order has been issued by the commissioners in regard to said action, and the proceedings by the commissioners were unauthorized and contrary to law; and the commissioners have given no further notice to parties interested of a further view of said sections of the street, and have given no further notice of any hearing to be had thereon.

" 11. Because the said county commissioners do not designate or describe in said notices, orders or decrees, the termini of the road which they proposed to view and widen, or alter the location of, so that interested parties have not been able to tell with certainty by such notices, orders, decrees, &c., what part of said road was included.

" 12. Because it does not appear from the said original petition whether it is a petition for a relocation of the lines of the street in Hyde Park alone, or of the whole county road called River Street.

" 13. Because the county commissioners have illegally assessed the expense of said widening, &c., upon your petitioners."

The answer of the respondents averred that all their proceedings were in all respects formal, regular and conformable to law; and that the same ought not to be quashed; and that the petitioners had not filed the petition within a reasonable time.

Hearing before Devens, J., who reserved the case for the consideration of the full court on the petition and answer.

O. T. Gray & G. W. Morse, for the petitioners.

W. Colburn, for the respondents, was not called upon.

DEVENS, J. The objections to the proceedings of the county commissioners, assigned as reasons for issuing a writ of certiorari, cannot be maintained. They are very numerous, and may be

conveniently considered in the order in which they have been stated in the application for the writ.

1. The termini of the road referred to are not expressly stated in the petition for its new location. But, while it would be essential that these should be carefully defined, where it was sought to lay out a new way or make alterations in a particular portion of an old one, in order to determine within what limits such new way or alterations were to be made, yet when an ancient way has existed in a town, known by a particular name throughout its entire length therein, it would be accurately described and its limits defined by the use of such name. The petition here set forth that the location of River Street in Hyde Park was uncertain in several places and generally needed revision, and prayed for a relocation of the same. River Street was an ancient public highway, known by this name, extending through Hyde Park from the Dedham to the Boston line, and the petition sufficiently informed those interested that the relocation prayed for was throughout its entire length.

2. The prayer of the petition was, that the county commissioners would "relocate" River Street. The Gen. Sts. c. 43, § 12, under which they proceeded, give express authority "either for the purpose of establishing the boundary lines of such road or making alterations in the course and width thereof," to "locate anew" a road. We can perceive no difference in the meaning of the word used in the petition from that used in the statute, and the petition was therefore sufficient to enable the commissioners to act. By alterations in the course and width of the road, strips of land would often be included not before within the boundaries, while others before within the boundaries would be excluded, and the authority to include and exclude these respectively was incidental to the authority to make such alterations.

3. No new road was constructed, nor was the course of the road materially changed, nor does it appear that any changes in grade were made, except such as were rendered necessary by the alterations in the "course and width," to which extent they would certainly be authorized.

The 4th and 5th objections are restatements varying in form only from the 1st and 2d, which we have already considered.

6. The decree that the commissioners had adjudged that common convenience and necessity required that the petition should be granted recited the prayer thereof. As the statute prescribes that an abstract of the petition only need be published, this was a sufficient compliance with it. Gen. Sts. *c.* 43, § 6. The order upon this adjudication for a meeting to "view and relocate" River Street in Hyde Park, was sufficient notice to all persons interested.

7. The first adjudication of the commissioners being limited to the determination that the locating anew the road was a matter of common convenience and necessity, it was impossible for them in their notice for the second meeting to state which of the many things that might be done in thus locating anew they proposed to do. The object of such meeting was, after hearing all parties, to arrange all the details of such new location and to decide in what manner it should be made.

8. The petition for the relocation was signed by five inhabitants of the town, as required by Gen. Sts. *c.* 43, § 12, in addition to three who were designated as selectmen; but these latter do not profess to act on behalf of the town, but unite with the other signers as citizens. It was therefore properly signed, so as to bring the matter of it before the commissioners.

If the selectmen have in any respect neglected their duty as to calling a meeting of the voters of the town, as set forth in this objection, it is a matter not pertinent to this inquiry.

9. We do not find any evidence in the case to sustain this objection.

10. The order of the commissioners was for a new location of River Street, in its whole length, to be completed by the town of Hyde Park, in three sections, within one, two and three years respectively; but the same order provided that no entry should be made under their proceedings upon a certain portion of the road near the Boston city line, except upon a supplementary order, which has never been passed. An inspection of the plan indicates that it was considered by the commissioners that a new way which they did not perhaps think themselves authorized to order under the petition before them, might possibly be laid out under other proceedings which would render so much of the new location unnecessary. But while the order was thus modified,

this modification did not affect that portion of the new location, where by virtue of the same order the land could be entered upon and the construction commenced at once. It was within the power of the commissioners to locate anew one portion of the road without locating anew another; and even if the effect of the failure to pass a subsequent order upon that part of the road, the construction of which was to be delayed, has been to invalidate the new location thereof, it can have no effect upon the rest. This was to be constructed independently of that which was not to be immediately entered upon, and the contemplated supplementary order could have no reference to it.

11, 12. These objections were considered in passing upon the 1st and 2d.

13. By the express provision of the Gen. Sts. *c.* 43, § 12, all the expenses of locating anew may be assessed upon the petitioners, the town or the county, as the commissioners may order, and the assessment of them upon the town was therefore proper.

As no sufficient ground has been shown for issuing the writ of certiorari by any error in the proceedings, it has, of course, been unnecessary to consider whether there has been any laches in presenting this application.          *Petition dismissed.*