BENJAMIN DEAN & others *vs.* CITY OF LOWELL.
ELIZA HADLEY & others *vs.* Same.

Middlesex. March 19. — April 4, 1883. DEVENS & W. ALLEN, JJ., absent.

In 1827, a highway was laid out by the county commissioners. In 1849, the city council of the city in which the highway was situated passed a resolution defining the line of the street. In 1850, the city presented a petition to the county commissioners representing that the boundary lines were in dispute, and requesting that the street might be located anew and the boundary lines established. The county commissioners thereupon, in 1852, established the lines, and determined that these lines were the original location of the street. An owner of land filed a petition to the county commissioners representing that by the location anew they had changed the line established by the location of 1827, and had taken part of his land, and praying for a jury to assess his damages. The commissioners refused to order a jury. The landowner then filed a petition to this court for a writ of mandamus to compel the commissioners to issue a warrant for a jury. After a hearing, the writ was ordered; and a warrant was issued by the commissioners for a jury. The jury changed the line from that established in 1852, and awarded no damages. This verdict was accepted by the court in 1855, and a copy of the verdict was sent to the commissioners, who thereupon passed an order declaring that the highway as altered and described by the verdict be established as a public highway. In 1877, the city passed an order defining and locating the line of the street, carrying the line as established by the jury to the line fixed by the commissioners in 1852. The same landowner filed a petition for a jury to assess his damages for the land so taken. *Held*, that, for the purpose of showing the line of the street at the time of the taking, the petitioner was entitled to put in evidence the proceedings of the commissioners in 1852, the petition and warrant for a jury, the verdict of the jury, and its acceptance; and that the respondent was not entitled to put in evidence the records of the laying out of the way in 1827, the resolution of the city council in 1849, and that portion of the records of the commissioners, in 1852, relocating the line of the street, with evidence tending to show that the line established in 1827, defined in 1849, and relocated in 1852, was identical with that established in 1877.

A deed of land described it as "beginning at the northwesterly corner of a piece of land conveyed to me by C.," thence by various courses and distances to a certain road, "thence southwesterly by said road" a certain distance "to a stone wall, thence southerly by said wall" a certain distance "to land of said C., thence easterly on said C.'s land" a certain distance "to the point of beginning." It appeared that the wall mentioned in the deed terminated at the southeasterly line of the road. *Held*, that the deed passed the fee to the middle of the road.

Two PETITIONS to the county commissioners for a jury to assess damages for the taking of lands of the petitioners, under an order of the city council of Lowell, passed on November 13, 1877, defining or locating anew the lines of Chelmsford Street. The cases were tried together before a sheriff's jury, and certain evidence offered by the petitioners was admitted against the respondent's objection, and certain evidence offered by the respondent was excluded. The jury returned a verdict in each case for the petitioners. The verdicts were returned to, and accepted by, the Superior Court; and the respondent appealed to this court. The nature of the evidence appears in the opinion.

*J. N. Marshall & S. Lincoln*, for the respondent.

*J. G. Abbott*, (*B. Dean* with him,) for the petitioners.

COLBURN, J. The way in question, now Chelmsford Street, was laid out by the commissioners of highways for the county of Middlesex, on September 26, 1827, the southeasterly line thereof being described by courses, distances, stakes and stones.

On November 20, 1849, the city council of Lowell passed a resolution defining the line of Chelmsford Street opposite the petitioners' lands and fixing the grade of the street.

On July 7, 1850, the city of Lowell, by its committee on streets, authorized by a vote of the city council, presented a petition to the county commissioners, representing that the boundary lines of Chelmsford Street were in dispute, and requesting that said street might "be located anew and the boundary lines thereof established."

After due proceedings had upon this petition, the county commissioners made their report, on January 6, 1852, which was duly recorded, establishing the boundary lines of said street, defining the southeasterly line by courses, distances and monuments, and reciting that they had determined that the line they fixed was the original location of said street.

On April 26, 1852, Josiah B. French presented his petition to the county commissioners, representing that by the locating anew of Chelmsford Street they had changed the line from that established by the original laying out of September 26, 1827, carrying it ten feet farther on to his land than the original line; and praying that a jury might be summoned to determine the matter of his complaint, and alter so much of the new location of said street as lay opposite and adjoining his land, and determine his damages caused by the doings of said commissioners. Notice of this petition was duly given to the city of Lowell, and upon a full hearing of the parties, on the first Tuesday of September, 1852, the commissioners refused to order a jury as prayed for. John Hadley presented a similar petition to the commissioners, with similar representations and prayers, upon which similar proceedings were had, and a jury refused. Thereupon French and Hadley presented their petitions to this court for writs of mandamus requiring the commissioners to issue warrants for a jury as prayed for. The case of *Hadley* v. *County Commissioners* is reported in 11 Cush. 394. Upon the issuing of writs of mandamus, the commissioners issued their warrants for a jury, and, after due proceedings had, the jury returned their verdicts, changing the line of the street opposite the petitioners' lands from that established by the commissioners in 1852, and awarding no damages. These verdicts were accepted in the Court of Common Pleas at June term 1855. Copies of the verdicts were remitted to the county commissioners, and on September 4, 1855, the commissioners made the following order in each of said cases: "Whereupon said commissioners order that the highway as altered, described in said verdict, be and the same is hereby established as and for a public highway, and that the same be recorded, to the end that the same may hereafter be known as such."

French and Hadley were the ancestors of the petitioners in the present cases.

The change made by the respondent in 1877, carried the line as established by the jury back to the line fixed by the commissioners in 1852.

For the purpose of showing the exact location of the southeasterly line of Chelmsford Street, at the time of the alleged taking

by the respondent, the petitioners offered in evidence the records of the proceedings of the commissioners in 1852, showing the petitions and warrants for a jury, the verdicts of the jury, and their acceptance. The respondent objected to the admission of this evidence, as immaterial and incompetent for the purpose for which it was offered, but the sheriff admitted it.

For the purpose of showing the true southeasterly line of the street, the respondent offered in evidence the records of the laying out of the way and establishing the southeasterly line in 1827, the resolution of the city council in 1849, defining the southeasterly line of the way and establishing the grade, and that portion of the records of the commissioners in 1852 showing the defining and relocating said southeasterly line by them, with evidence tending to show that the line as established by the commissioners in 1827, defined by the city council in 1849, and defined and relocated by the commissioners in 1852, was identical with that established in 1877, so that no land was taken in 1877 which was not before part of the way. All this evidence was excluded, against the objection of the respondent.

These admissions and exclusions of evidence raise the point upon which the respondent relies, which is, that the verdicts of the jury changing the line were absolutely null and void; the argument being that the right of the jury to change the line depended entirely upon an alteration having been made by the commissioners in relocating, and as the commissioners in 1852 did not in any place change the line from that established in 1827, as the respondent proposed to show by evidence, the jury had no authority to make any change. The proceedings of the commissioners were under § 9, and those of the jury under § 13 of the Rev. Sts. *c*. 24. The commissioners had the right, under the petition of the city, to change the lines of the street if they saw fit. Rev. Sts. *c*. 24, § 9. *Hyde Park* v. *County Commissioners*, 117 Mass. 416. If the commissioners changed the lines, the jury, under § 13, had the right to revise their doings, and make changes to a limited extent in the lines. *State Lunatic Hospital* v. *Worcester*, 1 Met. 437. The petitioners French and Hadley contended that the line of the street had been changed and their lands taken; the commissioners and the city contended that the relocated line and the original line were identical. In this state

of the controversy, the petitioners, who had been refused a jury, applied to this court. The decision of this court in *Hadley* v. *County Commissioners, ubi supra*, and the issuing of the writs of mandamus, settle conclusively that the petitioners had the right to have the proceedings of the commissioners revised by a jury, including the question whether the line had been changed or not. Doubtless it was the duty of the jury, if they found that the line had not been changed, to have rendered verdicts accordingly; but if they found that the line had been changed, they were fully warranted in rendering the verdicts they did. It is true that it does not appear in terms, by the verdicts of the jury, that they found that the commissioners had changed the line; but we think it appears by necessary implication that they so found, as upon any other finding they could not properly have rendered the verdicts they did. The city, which was a party to all the proceedings, as well as the commissioners, might have taken exceptions in the proceedings before the jury, and moved to have the verdicts set aside, as in any other case. When the verdicts were accepted and recorded, the line fixed by the commissioners, as changed by the verdicts, became the line of the street.

The city had no right to try again, in the cases at bar, the questions which were settled by the verdicts in 1855; the sheriff was right in admitting the records of the commissioners, showing the petitions and warrants for a jury, and the verdicts of the jury, for the purpose of fixing the southeasterly line of the street, and in excluding the record of the laying out in 1827, the resolution of the city council in 1849, the record of the relocation by the commissioners in 1852, and the other evidence offered for the purpose of controlling the verdicts of the jury.

For the purpose of showing their title to the land alleged to have been taken, the petitioners offered in evidence a deed from William Livingston to Josiah B. French, dated January 13, 1849, in which the description of the premises was as follows: "A certain piece of land situated on the westerly side of the Boston & Lowell Railroad, in said Lowell, containing one hundred thirty-nine thousand and eighty-nine square feet, be the same more or less, and thus bounded, to wit; beginning at the northwesterly corner of a piece of land conveyed to me this day

by Sylvester Crosby, thence about a northerly course two hundred fifty-three and thirty-six hundredths of a foot, to land of the Boston & Lowell Railroad Company, thence northerly by said railroad company's land, about four hundred sixteen and two thirds feet, to the road near the Arch Bridge, so called, thence southwesterly, by said road, about four hundred and thirty-three feet, to a stone wall, thence southerly by said wall, about three hundred and eighty-one feet to land of said Crosby, thence easterly on said Crosby's land about two hundred and six feet to the point of beginning."

It appeared in evidence that the road mentioned in this deed is the street now called Chelmsford Street, and that the wall named therein terminated at the southeasterly line of said street. The respondent requested the sheriff to rule that this deed was not sufficient to prove an ownership to the middle of said street; but he declined to rule as requested, and ruled that by virtue of said deed the title of the petitioners extended to the centre of said Chelmsford Street, to which the respondent excepted.

It is now well settled that, when a deed bounds an estate by or on a public or private way, the presumption is, if nothing else appears, that the centre of the way is the boundary intended. *Boston* v. *Richardson*, 13 Allen, 146. *Fisher* v. *Smith*, 9 Gray, 441. *White* v. *Godfrey*, 97 Mass. 472. *Peck* v. *Denniston*, 121 Mass. 17. *O'Connell* v. *Bryant*, 121 Mass. 557. The side of the road is not mentioned in the deed; but the respondent argues that, as the stone wall terminated at the southeasterly side of the street, the line running to the wall must necessarily run on the southeasterly side of the street, otherwise it could not strike the wall. We think this consideration is not sufficient to rebut the ordinary presumption, that the centre of the way is the boundary; neither the end or any other particular part of the wall is mentioned, and by considering the line on the road to run to the line of the wall, rather than the end of the wall, harmonizes all parts of the description of the premises better than the construction urged by the respondent. The construction put upon the deed by the sheriff was right.

*Verdicts accepted.*