## ARGUED AND DETERMINED

IN THE

# SUPREME JUDICIAL COURT

OF

# MASSACHUSETTS.

---

CHARLES S. LINCOLN, executor, *vs.* COMMONWEALTH.

Suffolk. December 10, 11, 1894. — June 12, 1895.

Present: FIELD, C. J., ALLEN, HOLMES, & KNOWLTON, JJ.

*Metropolitan Sewerage Act — Res Judicata — Public and Private Ways — Prescription — Creation of Additional Servitude — Interruption to Business by Construction of Sewer in Highway — Damages — Evidence.*

A relocation of a public way, establishing its termini, is conclusive, and evidence in a subsequent proceeding that a road included in such termini had not originally been a part of the public way, and the testimony of one of the petitioners for the relocation that, when the petition was signed, there was no controversy as to the termini of the public way, is not admissible to impeach the adjudication.

A highway by prescription may be relocated as well as a way laid out by a town.

The record of the relocation of a highway is admissible in evidence without the production of a plan to which the record refers.

The construction by the Commonwealth of a metropolitan system of sewers under a highway in a town does not create an additional servitude for which damages can be claimed by the owner of the fee.

Damages cannot be recovered for the temporary interruption of business caused by the construction of a sewer, which the Commonwealth has a right, without a new taking, to construct under a highway.

On the issue whether a road over the land of A. was a public or private way, a question to the assessor of taxes for the town in which the land lay, whether in assessing it he had ever deducted a roadway or assessed the land in two parts, is irrelevant, apart from other objections.

PETITION to the Superior Court, for a jury to assess the damages of the petitioner's testator, Orray A. Taft, for the taking by the Board of Metropolitan Sewerage Commissioners in behalf of the Commonwealth, under St. 1889, c. 439, as amended by St. 1890, c. 270, of a strip of land at Point Shirley, in Winthrop, one thousand feet long and thirty-three feet wide, for the purpose, expressed in the instrument of taking, which was recorded on May 9, 1890, of carrying and conducting under the land so taken, and of constructing, operating, and forever maintaining therein, an underground main sewer with connecting sewers, drains, manholes, and underground appurtenances, and of repairing and renewing the same.

Trial in the Superior Court, before *Bond,* J., who allowed a bill of exceptions, in substance as follows.

The petitioner's testator had owned since 1853, and had controlled since 1848, a tract of land containing about twelve acres, bounded on all sides but one by the sea, the extreme end of which was the northerly shore of Shirley Gut. On the opposite side of the Gut was Deer Island.

At the time of the taking there was an unfenced way, extending from a point on what was conceded by both parties to be Shirley Street, through land of one Hale, formerly of the Revere Copper Company, and thence in a straight line through the land of the petitioner's testator to his hotel, the corner of which was within about two hundred and twenty-five feet of the high-water mark at Shirley Gut. The petitioner contended that this was a private way, forming part of the land owned by his testator, and denied the contention of the respondent that it was part of a public highway in Winthrop called Shirley Street, or that it extended from the testator's hotel on Point Shirley down to high-water mark. The way had been built and maintained by the petitioner's testator at his own expense, and there was no evidence that it had been built beyond the hotel.

A plan of the premises showing the location of the way in question is given in the case of *Taft* v. *Commonwealth,* reported 158 Mass. 526, to which reference may be had.

The records of the town of Winthrop were produced, and showed the acceptance in 1868 of a "street laid out from City Farm to Point Shirley, according to a plan drawn by John Lowe."

The respondent then offered in evidence the record of the county commissioners for Middlesex County bearing the date of December 14, 1875, which adjudicated the locating anew of Shirley Street, " being a continuation of Winthrop Street towards Point Shirley, commencing at the junction of Winthrop and Beach Streets, and being forty feet wide."

The record then recited that " from this point to Point Shirley the road is but thirty-three feet in width, and is intended to be the same location as was laid out by John Lowe, civil engineer, in 1868, the centre being sixteen and one half feet westerly of corner of lot above referred to, and curving around eastwardly, the slope of what is known as Green Hill, belonging to Tewksbury and others, sixteen and one half feet parallel, from railing and sea wall about S. 35° 40' W. 475 ft.; then S. 1° W. 250 ft. ; thence S. 34° E. 410 ft. ; thence S. 42° E. 390 ft., to the line of the property claimed by the Revere Copper Company; thence S. 9° E. 225 ft. ; thence S. 36° W. 940 ft. ; thence S. 30° E. 1,290 ft. ; thence S. 1° E. 525 ft., being 16½ ft. east of the grounds of Revere Copper Company's works, to land of Taft; thence, same course, 1,025 ft., to beach at Point Shirley. A road was located by Mr. Lowe, commencing 250 ft. back from the last angle named (course S. 30° E.), and, deflecting westward, runs by land of said Copper Company S. 40° W. 572 ft. ; thence S. 87° W. 228 ft.; thence S. 36° W. 475 ft., to the beach, passing west of the Revere Copper Company's works. This was located 33 ft. wide. The above descriptions of these several streets in Winthrop are intended to conform to plans of the same, as made and surveyed by George Wadsworth, civil engineer, and, as now defined, are hereby relocated."

The petitioner objected to the admission of the record of the county commissioners, on the ground that the plans of Lowe and Wadsworth, therein referred to, were not produced, but the judge admitted the evidence, and the petitioner excepted.

The respondent then introduced in evidence the certificate of the clerk of the county commissioners, that no plans by Wadsworth of any streets in Winthrop could be found in the office of the commissioners. The respondent also offered in evidence the record of the county commissioners for Middlesex County, bearing date September 24, 1884, with the plan therein referred

to, whereby, on petition of certain " tax-payers in the town of Winthrop," Shirley Street in Winthrop was relocated. The record recited that " the following is a true description of said Shirley Street, as hereby relocated and established. Commencing at the easterly side of Revere Street, the northerly line of Shirley Street runs in a southeasterly direction. Also a branch commencing at a point in the easterly line of Shirley Street 132.29 feet north of point marked K on plan, and running in a curved line on a radius of twenty feet, a distance of 47.72 feet; thence in a straight line tangent to said curve in a southerly direction 542 13/100 feet to the division line between lands of S. W. Hale *et al.* and O. A. Taft; thence making a slight angle to the left, and running about one thousand feet to high-water mark, said line coming on corner of piazza to Taft's hotel, as shown on plan. The opposite side of said branch of Shirley Street is 33 ft. east of, and parallel with, the above described line, and is connected with the easterly line of Shirley Street by a curved line of 47.5 feet radius. For further particulars, see plan made by Whitman and Breck, surveyors, which plan is made a part of this description, and which description is intended to conform to said plan."

The petitioner objected to the admission of this evidence, on the ground that the petition upon which the action of the commissioners was based was signed by tax-payers of the town of Winthrop and not by citizens thereof; but the judge admitted the evidence, and the petitioner excepted.

The clerk of the town of Winthrop testified that the town records contained no record of a relocation of Shirley Street in 1875, nor any record of construction thereof or appropriation therefor, and it was agreed that, so far as he knew, no copy of the county commissioners' record of 1884 was transmitted to the town clerk until 1890, shortly prior to the taking of the land of the petitioner's testator.

One Floyd, called as a witness by the respondent, testified that he had lived in Winthrop for fifty years, and had been superintendent of streets from 1880 to 1890; that Shirley Street was a highway in that town which had been travelled by the public for thirty-five or forty years, and that the way through Taft's land had been there as long as the hotel; that in 1884,

under the authority of the selectmen, he had set bounds on each side of that way at all the angles down to high-water mark at the Gut, one of them being on Hale's line; that no repairs had been made on that part of the way going through Taft's estate subsequent to 1884, but that once or twice he had done a little work with the road machine on the branch for a short distance from Shirley Street.

On cross-examination he testified that Shirley Street, as he knew it, ran down through the Hale land to the water, and that no part of the branch had ever been known as Shirley Street, but was known as Taft's avenue or Taft's road; that prior to the action of the county commissioners he had never heard any claim that it was a part of Shirley Street; that he had used the scraper or road machine on the branch without authority or instructions so to do, and not for the purpose of construction, but only for repair. On re-direct examination he testified that the condition of the road in 1875 was about the same as at the time of the trial, consisting of a narrow travelled driveway made of clay, which Taft had caused to be placed there. On re-cross-examination he testified that, in 1875, there was a road which Taft had built extending from Shirley Street down to the piazza of his hotel, but no further.

The petitioner's testator having died since the former trial of this case, the testimony then given by him was introduced in evidence, and was in substance that he, Taft, became acquainted with the property owned by him in 1830, and controlled it after 1848; that in 1827 a small building was erected there to entertain people who were accustomed to land on the beach; that the people on Deer Island were in the habit of crossing over Shirley Gut and going on Point Shirley, and up through the town to Boston; that before 1850, and after the erection of the public institution on Deer Island the prisoners released therefrom were transported in the same way, until, on account of the annoyance they caused, that method of transportation was stopped; that the city of Boston always had a right of way through his place; that he supposed that the city had always taken it and everybody else; that the point was originally covered by salt works, but that in 1850 he tore them down and built a driveway over the place formerly covered by the works

and down to his front door; that people were wont to walk on the driveway, or go anywhere they pleased on the beach or upland, and that he never made any objection to any one going there except heavily loaded teams, and that, on account of some differences between visitors and his customers, he had cut away a wharf formerly erected by him; that he had never made any contract with the city of Boston with respect to its right to cross through his land; that, many years before, the Mystic water-pipes, with his permission, were laid through the way for the city of Boston, for which no damages had been paid to him, and the Revere water-pipes were laid there for his own use; that telegraph poles were placed on his land, but not in front of his house, the wires being attached to buildings; that he never knew or heard that the driveway down to his house was designated by the name of Shirley Street; that members of the government of the city of Boston were still likely to pass over the way to Deer Island at any time, and that parties were likely to go there at any time by permits.

The clerk of the town of Winthrop testified that he had resided there for forty-six years; that he had never heard of the southerly terminus of Shirley Street being elsewhere than on the harbor side of Point Shirley at the old stone wharf, or heard of any claim that the street went down past Taft's hotel, and terminated at Shirley Gut, and that he never knew the roadway past Taft's house to be called Shirley Street; that the public, he supposed, had gone over Taft's way ever since the hotel was there; that he assisted Lowe, the civil engineer who laid out Shirley Street in 1868; that in making the measurements for Shirley Street Lowe did not go upon Taft's land; that the street went down to the copper works on the harbor side of Point Shirley; and that the plan by Lowe, supposed to be lost, had been found among some old papers. On cross-examination he testified that before Shirley Street was laid out by Lowe there was an existing travelled road; that Taft always had his private way from Shirley Street down to his hotel, over which he did not think the public had ever travelled except to the hotel and to Deer Island.

One George, who had resided in Winthrop for fifty-three years, testified for the petitioner that the southerly terminus of Shirley

Street was not on Taft's land, but on land of the Revere Copper Company; that when Taft's driveway was reached, Shirley Street branched off to the right and ran down to the shore; and that, to his knowledge, the road to Taft's hotel was never known as Shirley Street. On cross-examination he testified that for thirty or forty years there had been a road there which could be travelled, although a little rough; that every one who went down there went over it, whether going to Deer Island, or to get kelp, or for other purposes.

One Floyd also testified, for the petitioner, that at the time that he and others signed the petition to the county commissioners for the relocation of Shirley Street there was no controversy as to what its southern terminus was; that there was a question in regard to the exact location of the whole street, but that the question did not relate to its southern terminus, nor to the road over Taft's land.

All the witnesses agreed that the way over Taft's land was not known as Shirley Street, and that they never knew of any controversy about it, and the plan of Lowe, which was introduced, showed no way over Taft's land.

The assessor of the town of Winthrop, called as a witness by the petitioner, was asked whether, in assessing Taft's land, he ever deducted a roadway through it, or assessed it in two parts. To this question the respondent objected, and the judge excluded it, subject to the exception of the petitioner.

The judge ruled that the way in controversy was a public way, and the petitioner excepted.

The petitioner offered to prove that the construction of the sewer along the line of the way over Taft's land rendered the way impassable, and caused serious interruptions to his business in the conduct of his hotel, and contended that even if this was a public way he was entitled to recover damages for such interruption of his business; but the judge ruled that no damages could be recovered on that ground, and the petitioner excepted.

The petitioner also contended that even if the strip in controversy was a public way, he was entitled to recover for damages for the right taken by the Commonwealth, on the ground that such taking created a servitude additional to that created by the laying out of the county commissioners; but the judge ruled

that no damages could be recovered on that ground, and the petitioner excepted.

It appeared that the laying out by the county commissioners through Taft's land extended only to high-water mark, while the taking by the Commonwealth extended to low-water mark, and a verdict was returned for the petitioner for this additional taking, subject to the exceptions alleged by him.

*S. J. Elder & E. A. Whitman*, for the petitioner.

*W. D. Turner*, for the Commonwealth.

HOLMES, J. In *Taft v. Commonwealth*, 158 Mass. 526, there was conflicting evidence as to whether Shirley Street extended across the petitioner Taft's land before 1875, and the record of a relocation in that year establishing a part of it on Taft's land was held conclusive against him. At the second trial, all the witnesses agreed that the way over Taft's land was not known as Shirley Street, and that they never knew of any controversy about it. The records of the town of Winthrop were produced and showed the acceptance in 1868 of a "street laid out from City Farm to Point Shirley, according to a plan drawn by John Lowe." The plan was put in, and did not show any way over Taft's land, and finally one of the petitioners for the relocation of 1875 testified that at the time he signed the petition there was no controversy as to where the southern terminus of Shirley Street was. On the other hand, the location by the town in 1868 did not cover the whole of Shirley Street. Shirley Street was an ancient highway. There was no question that there was a visible way over the place in dispute and there was some evidence from Taft himself and from other witnesses that there was a way there by prescription. The petitioner contended that on this evidence it must be assumed that the county commissioners had no jurisdiction, but the judge ruled that the way was a public way.

The petitioner makes some slight attempt to fortify his argument by the reference to John Lowe's plan in the relocation, and by suggesting that the petition for relocating was not intended to open this question. These suggestions may be dismissed with a few words. The relocation, although referring to Lowe's plan, overrides it, or supplies by express words what the plan does not show. The petition is broad enough to open any question which

could be raised on relocation, and what the petitioner intended does not matter.

Coming to the main point, we are of opinion that the ruling of the court was right. As was pointed out by the counsel for the Commonwealth, the conclusiveness of a relocation made in good faith, and not manifestly absurd, is laid down in stronger terms in *Hadley* v. *County Commissioners*, 11 Cush. 394, than it was in our former decision, 158 Mass. 526. See *Tufts* v. *Somerville*, 122 Mass. 273, 275 ; *Dean* v. *Lowell*, 135 Mass. 55. It is true on this evidence, as it was at the first trial, that the road in question was a mere spur of Shirley Street proper, even if not a part of it, and that the decision that it was part of Shirley Street was not absurd, even on the evidence produced as to the state of things before 1875. For, stated in a somewhat different way, the evidence showed that Shirley Street was an ancient highway in existence before the location of 1868, and some, if not all, of the evidence was that this continuous portion of the way was also an ancient highway. It was part of the same way in everything but name. *Commonwealth* v. *McDonald*, 160 Mass. 528. If it had not the same name, it had no public name so far as appears. Under these circumstances it is impossible to say that the county commissioners were not warranted in finding that the place in question was a part of Shirley Street, and their adjudication is not to be made dependent for its effect upon whether a jury agrees with them on the evidence which can be found many years after they decided what it was their duty to decide. It was not argued that highways by prescription may not be relocated, as well as ways laid out by a town. The language of the statute is, " whether the same was laid out by the authority of the town or otherwise." Pub. Sts. c. 49, § 13. " It is immaterial how it was originally established. If by prescription, the effect of a new location would be the same." *Stockwell* v. *Fitchburg*, 110 Mass. 305, 309, 310. *Richards* v. *County Commissioners*, 120 Mass. 401, 402.

The record was complete and clear without the plans, and the failure to produce them did not make it inadmissible.

The other exceptions do not require much discussion. An exception was taken to a ruling that the right of the Commonwealth to lay this sewer was not an additional servitude. It is

not disputed that, when a highway is laid out, the right to lay common drains is among the elements for which compensation is given. *Pierce* v. *Drew,* 136 Mass. 75, 81, 88, and cases cited. But it is said that the Metropolitan Sewer is an uncommon drain, and cannot be supposed by any fiction to have been contemplated and paid for in the laying out of a suburban road. The answer is, that our law recognizes no such distinctions, although they seem to prevail in some other States. *Van Brunt* v. *Flatbush,* 128 N. Y. 50. Dillon, Mun. Corp. (4th ed.) § 688. When land is taken for a highway, all uses of the land directly or incidentally conducive to the enjoyment of the public easement which the necessity and convenience of the public may require, either then or in the future, are paid for, wherever the highway may be. *Boston* v. *Richardson,* 13 Allen, 146, 159, 160. It sometimes is said that the whole beneficial use of the land is taken. *Commonwealth* v. *Lowell Gas Light Co.* 12 Allen, 75, 77. As practically the landowners get the full value of their land in such cases, if there is any injustice it is not they who suffer it. *Brainard* v. *Clapp,* 10 Cush. 6. *Cassidy* v. *Old Colony Railroad,* 141 Mass. 174, 177. *Newton* v. *Perry,* 163 Mass. 319. It being settled that one of the uses covered by the taking for a highway is an underground sewer, it extends to any sewer which is natural to the configuration of the ground. See *Titus* v. *Boston,* 161 Mass. 209, 212. The fact that the public in this case is represented directly by the Commonwealth, instead of by the town, is of no importance. The beneficial interest is the same either way. Also, it is held that the public right extends to authorizing companies to make use of the streets. *Pierce* v. *Drew,* 136 Mass. 75, 81. *Commonwealth* v. *Lowell Gas Light Co.* 12 Allen, 75. And if the Commonwealth has withdrawn from the town a part of the right formerly vested in it, that is no more a wrong to the petitioner than a conveyance in fee by a private person having a similar right in gross would be on the ground that it changed the chances of an extinction of the owner's blood.

Temporary interruptions of business caused by the construction of the sewer along the highway where the Commonwealth had a right to construct it without a new taking for the petitioner cannot be recovered for. This was all that the ruling of the court

meant. *Brooks* v. *Boston,* 19 Pick. 174, 178. *Treadwell* v. *Boston,* 123 Mass. 23, 25.

The question to the assessor, whether in assessing Taft's land he ever deducted a roadway, or assessed it in two parts, was irrelevant to any issue which was open, apart from other objections. See *Kenerson* v. *Henry,* 101 Mass. 152, 155.

*Exceptions overruled.*