## CANNABIS MFG. CO. v. TUCKER ET AL.

Suffolk, January, 1906.

*Deed — Boundary on Creek — Monuments at Side of Stream — Plan — Partition.*

The question in controversy in this case is as to the title to so much of the premises claimed by the petitioner, containing about 6,000 square feet near the middle thereof, as originally lay within the southerly half of the bed of Salt Creek, which formerly flowed through the property. The centre line of this creek formed the boundary line between Roxbury and Boston. The creek appears from the records to have been filled up somewhere between 1872 and 1883. No evidence as to the circumstances under which this was done was introduced, or any evidence outside the record, but the parties rest on the proper construction to be given to the deeds.

Title to the Roxbury portion of the property was in one Edward Sumner of Roxbury, who died in 1829 intestate, as a part of the " Dudley marsh " purchased by him from Thomas Dudley in 1786, and bounding northerly by the centre of Salt Creek. The Dudley marsh was set off to his widow as a portion of her dower, and in 1855 partition was had of the dower land among the Sumner heirs in partition proceedings in the Probate Court for Norfolk County. Among the lots described in the petition for partition was " about four acres of salt marsh in Roxbury, bounded East by Salt Creek; North on heirs of Joseph Warren; South on William Dudley; and West on heirs of Nathaniel Ruggles."

Commissioners were appointed, and as a part of their report they set off and assigned to certain heirs (under whom both petitioner and respondents claim title) several parcels including, " Also lot 7 on said plan of Marsh land (plan of Marsh land belonging to heirs of Edward Sumner made by Garbett & Woods, dated Nov. 1, 1855) bounded southeast by lot 6 on said plan 560 feet; southwest by lot 8 on said plan 42.60 feet; northwest by land of persons unknown to commissioners 391 feet; and again northwest and north by the water line on said plan 177 feet, containing 31,270 feet, together with the right of way over the whole of lot 8," and to a certain other heir, one Jane Haines (under whom both petitioner and respondents also claim) they assigned and set off " lot 6 on said plan of marsh land, bounded, southeast by lot 5, 577 feet; southwest by lot 8, 21 feet; northwest by lot 7, 560 feet; and northeast by the water line on said plan about 39 feet; containing 15,635 square feet."

With the papers in the partition proceedings is a " plan of piece of Marsh in Roxbury belonging to the Heirs of Edward Sumner " by Wm. A. Garbett, Surveyor, dated Nov. 1, 1855, which is the plan referred to by the commissioners. This plan shows the marsh divided into seven lots. It shows the centre line of the creek, labelled " Roxbury and Boston Line " and also the southerly side or water line of the creek. The side lines of the lots run to the water line of the creek, and the distances and areas are computed to the water line only.

The lots so assigned were later conveyed by the respective heirs by deeds using the same description, and the title so conveyed is now vested in the petitioner who claims title thereunder to the centre line of the creek. The respondents are the present representatives of the Sumner heirs, and claim that title passed under the partition proceedings to the water line only of the creek, that the fee in the southerly half of the creek remained unpartitioned and undivided in

the heirs of Edward Sumner, and is now vested, not in the petitioner, but in them.

There seems to be no case exactly in point. The petitioner relies on Clark v. Parker. The respondents reply that in that case the lots were described as bounding " on " the way in controversy, and that that was quite sufficient in itself to the decision that the fee therefore carried to the centre. In the case at bar the description, the measurements, the areas and the lines on the plan all stop at the water line and exclude the fee in the creek. The point is a fair one. Nevertheless the opinion in Clark v. Parker rests, not on that fact, but on the fact that it was the duty, and the sole duty, of the commissioners to make partition of the entire estate. Clark v. Parker, 106 Mass. 554. See also Miller v. Miller, 13 Pick. 237. The case of Morgan v. Moore on which the respondents rely was a case of voluntary partition among heirs by deeds of mutual release, and the decision rests squarely on the ground that as to the way on which the several lots abutted there was " not only no occasion for its division, but a manifest necessity for retaining it in common." Morgan v. Moore, 3 Gray 319. The necessity for retaining in common half the bed of a creek, cut off from access, unsalable and unusable except in connection with the several lots, does not appear. Nor aside from the matter of partition does it seem to me that it should be excluded from a grant simply for the reason that the description in bounding the property runs by monuments established in the only place where they could be put, viz., on the bank of the stream. Whether the rule laid down by Judge Gray and reaffirmed in some of the latest decisions be followed, that where a natural monument that has width is used as a boundary, the boundary line shall be by the centre of it, or the grant be construed according to the doctrine of Judge Holmes that the whole thing is a mere matter of intention and the intention in the absence of definite evidence to the contrary must be presumed to be by the

middle line of a way or stream, in either case it would seem that so far at least as a stream is concerned the mere use of monuments situated on the bank, or of the bank itself, for the purpose of measurements or description will not alone be sufficient to exclude the fee in the adjoining bed of the stream. Boston v. Richardson, 13 Allen 146; Dean v. Lowell, 135 Mass. 55; Crocker v. Cotting, 166 Mass. 183; McKenzie v. Gleason, 184 Mass. 452.

The monuments are usually established, and the line between them usually plotted, for the purpose of determining, not the line of the street or creek, but the boundary lines of the adjoining properties, which can best be shown, located or determined by using such monuments as termini to or from which measurements may be made. It seems to be against the trend of modern decisions to continue to construe such descriptions as showing an intent to exclude the natural, adjacent half of the fee in the adjoining stream or way. So far as the use of fixed monuments on the side of a street or way is concerned however, such appears to still be the law in this state. Bowers v. Selew, Land Court Decisions, p. 141, ante, and cases there cited. Perhaps the Supreme Court may at some future time modify this doctrine as to streets in accordance with a general line of development that has been more or less apparent in Massachusetts and very pronounced in some of the western states.

So far as streams are concerned, however, the reasons for using monuments situated on the bank are so imperative, the difficulty of using or even locating lines in the bed of the stream so obvious, and both the intent and the advisability of conveying title to the centre line so natural and so apparent, that no other intent seems ever to have been presumed. The early cases are reviewed in Cold Spring Iron Works v. Tolland, 9 Cush. 492, and the rule is there stated that wherever a grant is so framed as to touch the waters of a river and the parties do not expressly exclude the river,

one-half of the bed of the river is included by construction of law. " If the parties mean to exclude it they should do so by express exception." As to public boundaries there is no doubt about the matter. " Where a stream constitutes " (as did the creek in the case at bar) " the boundary between two nations, states or towns, each holds to the middle of the stream." Flynn v. Boston, 153 Mass. 372. There is no reason for any difference as to private grants. " It is a common method of measurement in the country, where the boundary is a stream or way, to measure from the bank of the stream or the side of the way." Dodd v. Witt, 139 Mass. 63, 65.

In the present case I think that the water line was shown on the plan, and that the measurements were taken to it, merely because that was the natural and only practical method for the surveyor to use at that time, and that those facts alone are not sufficient to rebut the presumption that title was intended to extend, both in the partition proceedings and the subsequent deeds, to the centre of the creek.

Decree accordingly.

W. A. Webster for petitioners.

H. M. Aldrich, A. M. Lyman for respondents.