INHABITANTS OF LEXINGTON *vs.* COUNTY COMMISSIONERS
OF MIDDLESEX.

Suffolk.    November 14, 1895. — February 28, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & LATHROP, JJ.

*Town — Way — Decision of County Commissioners — Mandamus.*

County commissioners located anew a way in a town, prescribing the manner in which it should be made, and that the town should, " at its own expense, remove all walls and fences back to the new lines of road," and assessing the expense thereof in part upon the town and in part upon the county, the county's portion being $3,000, which was to be paid whenever the road should be completed to the acceptance of the commissioners. The town built the way throughout the entire length covered by the order, and removed all walls and fences back to the line of the new location, except a certain embankment and retaining wall lying within such location, which the town declined to remove. The commissioners determined that the way had not been completed according to the order, and directed the payment of $2,200 to the town, which sum was paid and accepted. The commissioners afterwards completed the way at an expense of $800, which was paid by the county. *Held,* that the town was not entitled to a writ of mandamus, compelling a further payment by the county to the town.

PETITION for a writ of mandamus, requiring the respondents to draw an order in favor of the petitioner upon the county treasury for the sum of $800, or such part thereof as should seem proper to the court.   Hearing before *Lathrop*, J., who reported the case for the consideration of the full court, in substance as follows.

Upon a petition for locating anew Main Street in Lexington, the respondents, in September, 1889, ordered that Main Street be relocated and made sixty feet in width from Lexington Common to the Arlington line, a distance of nearly three miles. The work was required to be done by the town on or before January 1, 1891, and the respondents determined the sum of $3,000 to be the fair and just proportion to be paid by the county toward the expenses of making the alterations required by the order whenever the road should be completed to the acceptance of the respondents.   The order further provided that the town should, " at its own expense, remove all walls and fences back to the new lines of road."

During the year 1890 the petitioner built a travelled way between thirty-eight and forty feet in width throughout the entire length of the road covered by the order, and removed certain of the walls and fences back to the new lines of the high-way.   A controversy arose, in the latter part of 1890 or in the early part of 1891, between the selectmen of the town and the respondents, as to whether a certain embankment and retaining wall, lying within the limits of the new location at a point between the junction of Oak Street with Main Street and the Arlington line, should be removed.   The selectmen procured estimates of the probable expense of the work, and, after learning the amount, declined to remove the wall and embankment, although in all the other places on the road they moved back the walls and fences to the line of the new location.

At the place in question the general course of Main Street was east and west, but made a considerable curve to the right going east.   On the southerly line of the old location stood a retaining wall from thirty to forty rods in length, following the curve of the street.   This wall was a well built stone-faced wall between four and five feet high.   Above it the bank sloped back to a height of between four and five feet above the top of the wall,

and was of substantially the same height back to and beyond the new southerly line of the street as relocated, which line intersected the extremities of the wall and was drawn upon a curve of considerably longer radius than the curve of the wall on the old line of street. Accordingly the new line cut off a crescent-shaped piece of the banking, which was thereby placed within the limits of the new location. The length of the crescent was between thirty and forty rods, and its width was fifteen feet at its centre or widest part. The southerly side of the travelled way as constructed by the petitioner followed the retaining wall for a short distance at the widest part of the crescent.

The petitioner did nothing further toward constructing the street, but in the latter part of 1891 the selectmen contended that the street was completed in accordance with the terms of the order, and demanded payment of $3,000 from the county. The petitioner had expended upwards of $8,000 besides the $3,000 claimed from the county in making the alterations required by the order. On December 22, 1891, the respondents made an order, which was signed by the full board and placed on file with their records, as follows: " We, the County Commissioners for the County of Middlesex, do hereby certify that we have examined Main Street in the town of Lexington for acceptance, and find said street is not completed between Oak Street and the town line between Lexington and Arlington, in the respect that the walls along the road in said section have not been removed to the new lines of street, but is completed in all other respects. Wherefore we determine that said town is entitled to the sum of twenty-two hundred dollars at the present time, the balance to be paid when said street is completed through its entire length." Oak Street, mentioned in the order, intersects Main Street about one half-mile from the Arlington line. In pursuance of that order the county treasurer paid to the petitioner the sum of $2,200. Nothing further was done after that time until the respondents, on October 22, 1892, made a contract in behalf of the county with Otis and Bartley Harrington. The work to be done under this contract consisted in removing the old wall back to the southerly line of the new location, in excavating the bank to the grade of the street back to that line, and in building walls along the same line. The petitioner offered evidence tend-

ing to show that the expense of removing all walls and fences extending into the highway from Oak Street to the Arlington line would be from fifty to seventy-five dollars. No evidence was offered of the expense of resetting the wall, or of sloping down the bank to an angle of forty-five degrees.

By the direction of the county engineer, the contractors proceeded to remove the curved wall standing on the old line of street, and to excavate the bank down to the grade of the street and back to the southerly line of location. With the consent of the abutting owners, the contractors excavated about three feet more outside of the line of location for the purpose of erecting a new retaining wall so that its face would be flush with the line. Such a wall was so constructed, about four feet high, entirely outside of the location, in front of all the estates there abutting, except one; and in front of that estate, at the request of its owner, the contractors sloped the bank at an angle of forty-five degrees with the horizon, removing earth outside of the location so that the bank sloped down to the line of the street but did not extend into it. Parallel with the southerly line of the new location, at the place of the old embankment, and eight feet distant from the new location, the contractors ran a plough along, making a gutter. The space between this and the southerly line of the new location was graded off so as to finish the work in a workmanlike manner; and this has since been used for foot travel. A strip seven feet in width between the north edge of this sidewalk and the original travelled way was added to the travelled way. The gravel excavated from the bank was not used upon the street, but was sold by the contractors to private persons.

The county paid the contractors the full contract price for their work, which was $750. The county expended $50 in surveys and inspection required by the work done by it. No more work was thereafter done upon the street. It was admitted at the hearing that the street was now wholly completed to the satisfaction of the respondents. After the work was completed the town treasurer presented a certificate to the county treasurer, certifying that all claims by reason of alterations had been settled, and requested payment of $50; but the county treasurer declined to pay anything further.

The county engineer, under whose direction the whole work was done, testified that it would be better construction to leave the retaining wall around the bank as it was left by the town, than to take out the wall and to slope the bank down to the top of the wall to an angle of forty-five degrees, without further excavations, but that this would not have been good workmanship under the terms of the order.

The petitioner contended that the whole or a large part of the work done by the respondents was not required by their original order; that the expense of such work could not be included in the $3,000 to be paid by the county; that, as the road was now completed to the acceptance of the respondents, the petitioner was entitled to the whole of the $3,000, less sums already paid to the town or lawfully expended by the respondents in completing the road; that the petitioner fully performed all work lawfully required by the order; and that the respondents were concluded by their order of December 22, 1891, and by their interpretation of its meaning, as manifested by the work subsequently done by them. The respondents contended that the petitioner had failed to comply with the original order, and had not completed the work to the acceptance of the respondents, inasmuch as it had not removed all the walls within the limits of the location back to the new lines of the street, and there reconstructed them; and that the expenditures made by the respondents were required by the order.

The judge found that the respondents had duly made the orders and decrees set forth in the petition with reference to locating anew Main Street; that the sum of $3,000 was to be paid by the county to the petitioner toward the expenses of the alterations whenever the road should be completed to the acceptance of the commissioners; that the petitioner had not complied with the order of the respondents, inasmuch as, on the foregoing facts, the petitioner did not complete the road to the acceptance of the respondents, and did not remove the walls back to the new line of road, and grade the banks on the sides so that they should not make a greater angle than forty-five degrees with the horizon; and that the town authorities made no objection to the work while it was being done by the county commissioners, and made no claim that the work so done was beyond the scope of

the original order, until the bringing of this petition, and made no claim for any further payment of money in addition to the $2,200 paid in December, 1891, except the claim of the treasurer for $50, as above stated.

On the whole case, the judge was of opinion that the case was not one where the court was called upon, in the exercise of its judicial discretion, to issue a writ of mandamus as prayed for; and denied the petition. Such order was to be made as law and justice might require.

*E. I. Smith*, for the petitioner.

*W. H. Coolidge*, (*G. S. Selfridge* with him,) for the respondents.

KNOWLTON, J. The respondents located anew the way in question, and prescribed the manner in which it should be made, and assessed the expense thereof in part upon the town and in part upon the county, in accordance with the provisions of the Pub. Sts. c. 49, §§ 9, 13. Under the statute and order of the commissioners it was the duty of the town of Lexington to construct and build the way in the manner prescribed in the order. Of the expense of construction $3,000 was assessed upon the county, and the balance upon the town. By the terms of the order this sum was to be paid towards the expense of the alteration out of the county treasury into the town treasury of Lexington whenever the road should be completed to the acceptance of the commissioners, and all claims for damages growing out of the alterations should be settled. The road never was completed by the town to the acceptance of the commissioners, and the town refused to construct it according to the order as the order was understood and interpreted by the commissioners. In regard to all matters of fact involved in the determination of the question whether such an order has been complied with, the decision of the county commissioners is final and conclusive. *Rice* v. *Middlesex Commissioners*, 13 Pick. 225, 228. *Walker* v. *Orange*, 16 Gray, 193. We see no error of law in their decision that the town failed to complete the work. Indeed, it seems clear that the decision was correct. By the terms of the order the town was not entitled to receive the sum of $3,000. This sum was to be paid only upon the performance of the whole work. The commissioners thereupon made an

order for the payment of $2,200 to the town, which sum was accordingly paid and accepted. On the failure of the town to finish the work, it became the duty of the commissioners to complete the road in the manner prescribed by the order. Pub. Sts. c. 49, § 60. *Richards* v. *County Commissioners*, 120 Mass. 401. This they did at a cost of $800, which was paid from the county treasury. The whole balance of the $3,000 was thus applied to the payment of the expense of the alteration, and there was nothing more of the sum to be paid by the county which could be turned over to the town. These expenses and charges were properly paid from the county treasury, under the Pub. Sts. c. 49, § 60, and if there had not been money in the treasury applicable to the payment of them it would have been the duty of the town to reimburse the county for the payment, and the amount could have been collected on a warrant issued against the town by the county commissioners. The commissioners having previously retained this sum from the assessment made upon the county for the benefit of the town, there was no occasion for reimbursement from the town, nor for the issuing of a warrant against the town.

It is contended that the order could not be complied with literally by the town or the county commissioners without a violation of the rights of the abutting landowners, or without their consent. If that be so, we think it does not affect the case in its present form. It is to be inferred that the landowners consented to the doing of the work in accordance with the order, and for aught that appears the method adopted was a good one, both for the public and the abutters. We are of opinion that the discretion of the justice who heard the case was rightly exercised in his refusal to issue a writ of mandamus.

*Petition dismissed.*