### INHABITANTS OF WATERTOWN *vs.* COUNTY COMMISSIONERS OF MIDDLESEX.

Middlesex.    November 14, 15, 1899. — April 10, 1900.

Present: HOLMES, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Certiorari — Relocating, Widening, and Laying out Street — Delay and Certain Circumstances making it unjust to quash Proceedings.*

In this case, which was a petition for a writ of certiorari to quash the proceedings of county commissioners in relocating, widening, and laying out a street in one town by taking land within the limits of another town, and by ordering that town to pay for the land so taken and to construct a portion of the street, the delay in bringing the petition and the circumstances occurring between the final order of the respondents and the filing of the petition make it unjust to quash the proceedings.

PETITION, for a writ of certiorari, to quash the proceedings of the respondents in exceeding their authority in locating Belmont Street and in laying out the same by taking land lying within the limits of the town of Watertown, and by ordering the town of Watertown to pay for the land so taken and to construct a portion of the street, the petition alleging that the proceedings and the relocating, widening, and laying out were wholly erroneous. Hearing before *Knowlton*, J., who reserved the case for the consideration of the full court. If the proceedings showed such error of law as to entitle the petitioner to the writ, it was to issue; otherwise the petition was to be dismissed. The facts appear in the opinion.

*H. M. Knowlton & J. E. Abbott*, for the petitioner.

*F. Dodge & G. S. Selfridge*, for the town of Belmont.

BARKER, J. As both the streets were highways and formed together a continuous highway, the respondents had jurisdiction to alter, widen, and straighten them, and to locate their new bounds. This power has been in the county commissioners since that tribunal was established by St. 1827, c. 77. See St. 1827, c. 77, § 7; Rev. Sts. c. 24, §§ 1–5; Gen. Sts. c. 43, §§ 1–7; Pub. Sts. c. 49, §§ 1–7. Under this jurisdiction the commissioners can widen, narrow, straighten, and change the grade of any highway. *Goodwin* v. *Marblehead*, 1 Allen, 37, 39, and cases cited. *Cutter* v. *Cambridge*, 6 Allen, 20. *Bowley* v. *Walker*, 8 Allen, 21. *Bemis* v. *Springfield*, 122 Mass. 110, 116. See also *Richards* v. *County Commissioners*, 120 Mass. 401. That a highway is wholly within a single town is immaterial. *Commonwealth* v. *County Commissioners*, 8 Pick. 343. · *Goodwin* v. *Marblehead*, 1 Allen, 37, 39. *Blackstone* v. *County Commissioners*, 108 Mass. 68. It has been held that a highway may be located upon both sides of the division line between two towns, in such a manner that one side of the way is in one town and the other side of the way in another town. *Commonwealth* v. *Stockbridge*, 13 Mass. 293. It follows from these decisions that the commissioners may so widen a highway that the division line between two towns will be within the limits of the widened way. Therefore the respondents had power, under proper proceedings, to straighten and to alter and widen Belmont Street by making land in Watertown a part of the altered

highway, notwithstanding the fact that before the action of the commissioners the street was wholly within the town of Belmont, and that one of the lines of the street coincided for a long distance with the division line between the towns of Belmont and Watertown.

It is contended, however, by the inhabitants of Watertown that the respondents had no jurisdiction to widen or to deal with the highway upon the petition under which they proceeded. Existing ways, whether highways or laid out by the authority of the town, within a town may be located anew by county commissioners under jurisdiction conferred by a different provision from those already cited, and it is contended that the petition on which the respondents acted was addressed to the power which is given them by this different provision, and that that power did not authorize them to deal with the highway. The different provision referred to is Pub. Sts. c. 49, § 13, and is in these words:

" When application is made to the commissioners by a town, or by five inhabitants of a town, to locate anew a road within such town, whether the same was laid out by the authority of the town or otherwise, they may, either for the purpose of establishing the boundary lines of such road or of making alterations in the course or width thereof, locate it anew, after giving like notice and proceeding in the manner prescribed in laying out highways. The expense shall be assessed upon the abutters, or upon the petitioners, or upon the town or county, as the commissioners may order."

The contention is that this language does not give the commissioners jurisdiction to locate anew a highway which lies next to the division line between the town in which the highway is and an adjoining town, and that the petition is a petition to locate anew under this statute provision.

The most natural meaning of the words " to locate anew a road within such town " is not that the new location must be within such town, but that the road as it exists when the application to locate anew is made must be within the town. Very likely neither the Legislature which originally made the provision nor any of those which have since re-enacted or amended it considered the question of its applicability to a road situated

like Belmont Street.  If a way so situated was to be dealt with under the provision, it would be unwise to restrict the commissioners to changes to be made upon one side of the way only; for there is no good reason why a way so situated should not be so laid as best to serve the public convenience.  The provision applies to town ways as well as to highways.  The town and its officials have no power to make a town way except in their own town.  If, therefore, town ways adjoining town lines were common, it would be reasonable to give to county commissioners the power to locate them anew without regard to town lines, so that the travel might be the better accommodated.  As at first enacted the provision placed all the expense upon the petitioning town, although it now may be assessed upon the petitioners, the abutters, the town, or the county as the commissioners may order.  It would be anomalous, though we do not see that it would under all circumstances be unjust, to make one town pay the whole expense of a road laid out partly in another town.  The abutters, on whom the expense may be assessed, would, in case of a way so located anew as to be in two towns, be charged in respect of lands in their own towns.  The town upon which the expense may be assessed would seem to be only the town which can petition, or whose five inhabitants can make the application; namely, the town within which the road is when the application is made.  On the other hand, a road situated as Belmont Street was situated when the petition of February, 1898, was made to the respondents, is a road entirely within one town; and so is within the language of the section.  If, as would seem to be improbable, that town, or five of its inhabitants, should see fit to ask county commissioners to locate anew such a road under Pub. Sts. c. 49, § 13, rather than to alter it under the other branch of the statute, it is difficult to give any good reason why the commissioners would not have jurisdiction so to do.

There is nothing in the history of the legislation which militates against this view.  The statutes have been St. 1835, c. 152, § 8 ; Rev. Sts. c. 24, § 9 ; St. 1851, c. 214 ; Gen. Sts. c. 43, § 12 ; St. 1873, c. 165 ; Pub. Sts. c. 49, § 13.  The first of these provisions is part of the act which changed the office of county commissioner into an elective office.  Under St. 1786,

c. 67, § 4, the court of sessions had jurisdiction to alter any highway. This power was transferred to commissioners of highways appointed by the governor in the several counties by St. 1825, c. 171, § 2. It was again transferred to county commissioners upon their establishment as officers appointed by the governor for the several counties by St. 1827, c. 77. See St. 1827, c. 77, §§ 4, 7; St. 1828, c. 103, § 3. When the Legislature by St. 1835, c. 152, made the office of county commissioner elective, it also, by §§ 7 and 8 of that statute respectively, authorized the commissioners to order specific repairs upon an existing highway when asked to lay out or alter a highway in the same manner as is now provided by Pub. Sts. c. 49, § 10, and upon the petition of a town to locate anew any road or roads within the town, whether laid by the authority of the town or of the county, either for the purpose of establishing the bounds, or of making any alterations in the route or width, all of the expenses to be paid " by the town making the application." St. 1835, c. 152, § 8. This provision, with only verbal changes, was continued in Rev. Sts. c. 24, § 9, and in the same chapter were also continued the general authority to county commissioners to alter highways and to make specific repairs. §§ 1–7. In 1851 any five inhabitants of a town were authorized to apply to the commissioners to locate anew a road within their town, the persons making the application to pay all the expense. St. 1851, c. 214. The commissioners who reported the General Statutes consolidated in one section Rev. Sts. c. 24, § 9, and St. 1851, c. 214. See Commissioners' Report, c. 43, § 12. This was amended by the Legislature so as to allow the expense to " be assessed upon the petitioners, or upon the town or county, as the commissioners order." Amendments to Commissioners' Report (1859), c. 43, § 12 (No. 8). Chapter 43, § 12, of the Commissioners' Report and the amended provision became Gen. Sts. c. 43, § 12. The general provisions giving the commissioners power to alter all highways and to make specific repairs were continued in the same chapter. See Gen. Sts. c. 43, §§ 1–4, 8. The last change in this provision was made by St. 1873, c. 165, which authorized the commissioners to order the expenses to be assessed upon the abutters. As so amended this provision as well as those which gave the commissioners

authority to alter any highway and to order specific repairs have been since continued in force.   Pub. Sts. c. 49, §§ 1–6, 10, 13. They are, therefore, to be construed as parts of a system which, as has been said, clothes the commissioners with extensive discretionary powers.   *Blackstone* v. *County Commissioners*, 108 Mass. 68.

The principal decisions in which the statutes now consolidated in Pub. Sts. c. 49, § 13, have been considered are these: *Whately* v. *County Commissioners*, 1 Met. 336, 343; *State Lunatic Hospital* v. *Worcester*, 1 Met. 437; *Hadley* v. *County Commissioners*, 11 Cush. 394; *Damon* v. *Reading*, 2 Gray, 274; *Barnes* v. *Springfield*, 4 Allen, 488; *Hobart* v. *Plymouth*, 100 Mass. 159; *Stockwell* v. *Fitchburg*, 110 Mass. 305, 309; *Blake* v. *County Commissioners*, 114 Mass. 583, 587; *Hyde Park* v. *County Commissioners*, 117 Mass. 416; *Richards* v. *County Commissioners*, 120 Mass. 401; *Tufts* v. *Somerville*, 122 Mass. 273; *Foster* v. *Park Commissioners*, 133 Mass. 321, 332; *Dean* v. *Lowell*, 135 Mass. 55; *Chandler* v. *Railroad Commissioners*, 141 Mass. 208, 211; *Brigham* v. *Worcester*, 147 Mass. 446; *Lincoln* v. *Warren*, 150 Mass. 309; *Cambridge* v. *Railroad Commissioners*, 153 Mass. 161, 167; *Taft* v. *Commonwealth*, 158 Mass. 526, 550; *Lincoln* v. *Commonwealth*, 164 Mass. 1, 9; *Lexington* v. *County Commissioners*, 165 Mass. 296; *Cambridge* v. *County Commissioners*, 167 Mass. 137.   See also *Bigelow* v. *Worcester*, 169 Mass. 390, 393.

None of these cases are decisive of the question whether a highway situated as Belmont Street was situated can be located anew under the provisions of Pub. Sts. c. 49, § 13.   In *Tufts* v. *Somerville*, 122 Mass. 273, in which it was held that assessments under the betterment statute of 1871, c. 382, could not be laid for betterments resulting from proceedings under Gen. Sts. c. 43, § 12, it was said that the Legislature has treated the subject of locating a road anew as distinct from that of laying out, altering, or discontinuing; and that the purpose of locating anew is mainly to establish the boundary lines of a road which are in doubt or dispute; and the opinion in that case points out that the rules applied to locating anew by St. 1835, c. 152, § 8, and the subsequent statutes governing such proceedings, are different from those which govern the laying out, altering, or dis-

continuing highways. These differences, assuming that St. 1887, c. 124, has not changed the rule as to betterments in cases of technical locating anew under Pub. Sts. c. 49, § 13, are that while the commissioners can alter a highway upon the petition of any party, they can locate anew only upon the petition of the town within which the highway is or of inhabitants of that town, and that the land damages and other expenses are to be assessed by the commissioners upon the abutters, or upon the petitioning inhabitants of the town within which the way is, or upon that town, or upon the county, and also that the provisions of the general betterment laws do not apply.    When a highway is altered under the other branch of the statute, the land damages are to be paid by the county, the way may be laid under the betterment laws, the expenses, except land damages, are to be met in the first instance by the towns in which the work of construction is to be done ; and when those towns have completed the work to the acceptance of the commissioners, such sums may be paid to them from the county treasury as the commissioners may order.

It has been decided that in construing the return of county commissioners to a writ of certiorari such a meaning shall be given to it " as appears substantially and by fair interpretation, taking the whole instrument together, to have been intended by them." *Goodwin* v. *Marblehead,* 1 Allen, 37, 40. The same rule should be applied in construing their answer to a petition for the writ, and in determining under which branch of their authority they have acted in the proceedings which the petition for certiorari calls in question.

Considering the situation and characteristics of the highway with which the respondents have dealt, the different rules which apply to and govern the alteration of a highway under Pub. Sts. c. 49, § 1, and the technical locating anew of a highway under Pub. Sts. c. 49, § 13, the form of the petition upon which the respondents acted, the steps which they pursued, the adjudications and orders which they passed, and the circumstances disclosed by the record before us, have they attempted to alter the highway by widening and straightening it, under the general power given them by Pub. Sts. c. 49, § 1, or have they attempted to locate it anew under the more limited and peculiar provisions of Pub. Sts. c. 49, § 13?

As was said in *Tufts* v. *Somerville, ubi supra*, the main purpose of locating anew is to establish the boundary lines of a road which are in doubt or dispute. The town of Belmont was incorporated so late as the year 1859. It would be surprising if that boundary line of Belmont Street, which was also the division line between Watertown and Belmont, had become a matter of doubt or dispute. On the other hand, it would be probable that the growth in population participated in during recent years by all the territory in the neighborhood of Boston had made such an increase in travel and had so changed the nature of the travel seeking to use Belmont Street and North Street as to make it a matter of common convenience and necessity that those highways should be straightened and widened, their grades changed, and the streets adapted to the present use of the public.

Neither the town of Belmont, nor any inhabitants of that town, nor any inhabitants of Watertown would be expected to ask the commissioners to make costly changes in Belmont and North Streets in such a way that the commissioners could assess the whole expense of them upon Belmont, or upon the individuals who made the petition. Individual inhabitants of Watertown would not be expected to join in a petition which, if for locating anew under Pub. Sts. c. 49, § 13, could be made only by inhabitants of Belmont, within which town the highway was, or by that town. All these circumstances point to a request for the alteration of the highway rather than to one for locating it anew. While the proceedings were pending, five other petitions of the same tenor as the first were presented to the respondents, signed by fifty-six inhabitants of Watertown and by two other persons described as owners of property lying in Watertown.

The original petition, made by thirteen inhabitants of Belmont and by six inhabitants of Watertown, was the one on which the proceedings were had. It does not specify Pub. Sts. c. 49, § 13, as the statute under which it is preferred. After representing that Belmont Street and North Street "are uncertain in their boundaries, of insufficient width and in need of relocation, widening and general revision," it prays that the commissioners "will cause said Belmont and North Streets to

be relocated or located anew, widened and straightened in such manner as your honorable board may deem proper and expedient after due proceedings in accordance with the provisions of the Public Statutes and any amendments thereof."

The first step taken by the respondents was to order notice to all persons and corporations interested that the respondents would meet at a time and place stated to view the premises and hear the parties, to be served by serving a copy of the petition and of their order upon the town clerks of Belmont and Watertown, by publishing the petition and order in a newspaper printed at Watertown, and by posting copies of the petition and order in two public places in each of the towns of Belmont and Watertown. This order of notice was precisely that required if the respondents were acting under their general authority to alter highways, while upon the construction of Pub. Sts. c. 49, § 13, now contended for by the present petitioner, the service of notice upon the town clerk of Watertown and the posting of copies of the petition and order in two public places in that town were unnecessary. See Pub. Sts. c. 49, § 3. This, however, is of but slight significance or none at all if, as we are inclined to think, the respondents in making a technical "locating anew" of the highways under Pub. Sts. c. 49, § 13, had power to so widen or straighten the highways as to put some part of the way as they should locate it anew in the town of Watertown.

The next step in the proceedings consisted of the view, the hearing, and the adjudication of common convenience and necessity, which adjudication seems to have been in these words, " that said relocation is of common convenience and necessity." The expression used is neither the technical "locate anew" of Pub. Sts. c. 49, § 13, nor the comprehensive "altered" of Pub. Sts. c. 49, § 1. Perhaps the respondents may have used the words "said relocation" to refer to the whole prayer of the petition, that the streets "be relocated or located anew, widened and straightened." Their subsequent action under the adjudication is as consistent with this view as with any other. How much uncertainty there in fact was about the boundaries of the highways it might be interesting to know. The petition for certiorari and the agreed facts are silent upon the point, and all

that we have are the general statements of the petitions to the respondents and the respondents' answer in this case, which alleges that they found and determined that the streets "were uncertain in their boundaries, of insufficient width and in need of relocation, widening and general revision."

The next step after the adjudication of common cönvenience and necessity was the making of an order giving notice that upon the petition for the relocation of Belmont and North Streets in Belmont the respondents had adjudged " that said relocation is of common convenience and necessity," and that they would meet, at a time and place stated, " to locate accordingly." This meeting was notified by serving the town clerks of the two towns each with a copy, by posting a like copy in two public places in each of the towns, and by publishing a like copy in a newspaper published in Watertown. This notice again was that which would be required upon the alteration of the highways under Pub. Sts. c. 49, § 1.

In accordance with this notice the respondents proceeded to take their final action. Their return states that they " proceeded to relocate said Belmont and North Streets as prayed for in said petition," and then gives a particular " description of said streets as hereby laid out and ordered." The technical words " locate anew " are not used, though the respondents may have thought that " relocate " was equivalent to them. The expression " as hereby laid out and ordered " would be appropriate in proceeding under Pub. Sts. c. 49, § 1. Following this description, which consists in defining what are called the new lines of the streets, comes an order to the town of Belmont to lay open, construct, and complete so much of Belmont street as lies within that town, and also to do the same with North Street; and next an order to the town of Watertown to lay open, construct, and complete so much of Belmont Street as lies in Watertown. Land damages to the amount of $7,493 are assessed to the proprietors of lands " over which said highways are thus laid out." Then follow orders that Belmont and Watertown respectively shall pay all land damages in excess of these awards for land taken in the respective towns, and that the damages assessed by the respondents shall be paid out of the treasury of the town in which the land lies. Then the return recites that the " commissioners

further order that the highways described in said return be, and the same is hereby established as and for a public highway, and that the same be recorded to the end that the same may hereafter be known as such." Then follows an order determining that $4,000 " is a just and fair proportion of the expenses of said alterations " to be paid out of the county treasury to Belmont and $2,000 " a just and fair proportion of the expenses of said alterations " be so paid to Watertown. Finally the commissioners " declare the highways described in this return laid out under the provisions of law authorizing the assessment of betterments."

This summary of the final action of the respondents does not wholly dissipate the doubt as to whether they thought they were proceeding under their general authority to alter highways, or under the power to locate anew given by Pub. Sts. c. 49, § 13. They do not use the technical words "locate anew" in which the power given by the section last cited is conferred. They use the word "relocate" with a reference to the petition as defining it, as in their preliminary adjudication as to common convenience and necessity, and they also use the words "laid out" in giving the description of the way as it purports to be made by their order, and in awarding the land damages, and in providing for their payment by the towns, and they speak of the "said alterations" and of "said location" in their order for the repayments out of the county treasury to the towns. They do not assess all the expenses upon the abutters, the petitioner, the town of Belmont, or the county, as is required in case of a technical locating anew. On the other hand, they order the land damages to be paid by the towns, while in case of the laying out or the alteration of a highway under Pub. Sts. c. 49, § 1, those damages must be paid by the county. Pub. Sts. c. 49, § 58. But they determine that the betterment act shall apply, which cannot be done if they were proceeding under their authority to locate anew. While, as in the petition considered in *Hyde Park* v. *County Commissioners*, 117 Mass. 416, the word "relocate" may well be held to confer jurisdiction under Gen. Sts. c. 43, § 12, or Pub. Sts. c. 49, § 13, the word may not in every instance be used as the exact equivalent of the words "locate anew" of those sections. Upon the whole we are inclined to consider the proceedings as having been under the

more general authority conferred by Pub. Sts. c. 49, § 1. So construed but one error appears, namely, that the land damages are ordered to be paid by the two towns, rather than by the county. We do not think that under the circumstances that error requires us to quash the proceedings. The original petition was filed in March, 1898, and the adjudication that common convenience and necessity required the relocation was on April 12, 1898. At the meeting on May 16 to relocate, the whole objection of the selectmen of Watertown was to any action that would subject Watertown to expense. At that meeting a plan was exhibited by the commissioners, in accordance with which the subsequent alterations appear to have been made. No one objected that the commissioners had not authority to make such alterations under the petition, or contended that the proceedings were under Pub. Sts. c. 49, § 13. The final order was made on June 14, 1898. At no time until the commencement of the present proceedings on October 19, 1898, did the authorities of Watertown notify the county commissioners or the town of Belmont that the inhabitants of Watertown objected to the validity of what the commissioners had done. On June 30, 1898, Belmont appropriated the sum of $25,000 to do what the order of the commissioners required of that town, and proceeded with the work of complying with the order. Before the petition for certiorari was filed some of the work had been completed, other parts were in process of construction, and Belmont had expended and become liable for about $10,000 on account of the work. Whether Belmont has paid any of the land damages does not appear. Besides this the selectmen of Belmont have granted a location for a double track to the West End Street Railway Company, in the highway as laid out by the commissioners, and that location was accepted by the company in July, 1898, and except for a short distance, where only one track was built, double tracks have been put in by the company, in conformity to the highway as the commissioners ordered it to be built. It is true that the chairman of the selectmen of Watertown told the president of the railway company on July 15, 1898, that the selectmen of Watertown believed that the action of the commissioners was illegal, and that a town meeting would be called as soon as practicable to act upon the matter of setting it

aside; but no town meeting was held until September 27, 1898, and the petition for certiorari was not filed until October 19, 1898. Assuming that the president of the railway company told the selectmen of Belmont what he had been told by the chairman of the selectmen of Watertown, there was nothing in that which required the authorities of Belmont to refrain from doing what they had been ordered to do by the commissioners, or which required the railway company to wait indefinitely to see what the town of Watertown would do. So far as appears, the town of Belmont has acted in good faith. It would be difficult to say that the authorities of Watertown have acted with that promptness which they should have displayed in a matter of this kind. See *Noyes* v. *Springfield*, 116 Mass. 87. They have suffered the town of Belmont to go on and incur large liabilities and expend large sums, besides taking other action upon the assumption that the action of the county commissioners was valid.

It seems to us upon the whole that justice does not require us to grant the writ of certiorari, but rather the contrary. Although the error in regard to land damages would have led to a judgment correcting that part of the commissioners' action at least, if the objection had been seasonably taken and the petition for certiorari promptly brought, (see *Westport* v. *County Commissioners*, 9 Allen, 203,) the delay, and its consequences to others than the petitioner, have been such that the petition should be denied. *So ordered.*