Mary T. Bennett & another *vs.* Inhabitants of Wellesley & another.

Petitioners in thirty-nine other Petitions *vs.* Same.

Norfolk.   March 24, 1905. — October 19, 1905.

Present: Knowlton, C. J., Morton, Lathrop, Hammond, Loring, & Braley, JJ.

*Way*, Highway, alteration or relocation.   *County Commissioners.   Practice, Civil. Words, "Alteration."*

Where the bounds of a public street of a town are uncertain and in dispute by reason of encroachments and other causes, and it being proposed to devote a part of the street to the tracks of a street railway the selectmen of the town have granted to a street railway company a location in the street with the condition that the railway company shall pay all expenses of the "location or relocation and widening" of the street, and where under these circumstances eleven citizens of the town headed by the selectmen petition the county commissioners for the "alteration" of the street "by the widening, straightening and relocation" of the street, and the county commissioners adjudge that common convenience and necessity require that the street be "widened, straightened and relocated" as prayed for, and "do so widen, straighten and relocate anew said street", and order that all the expenses of the relocation and widen-

ing shall be paid by the town, and thereafter amend their record by declaring that in making the order they acted wholly under the authority given to them by R. L. c. 48, § 12, the petition in spite of the use of the word "alteration" is for a relocation of the highway under § 12 mentioned above and not one for the alteration of the highway under § 1 of the same statute, and the action of the county commissioners in ordering the expenses to be paid by the town is valid. *Livermore* v. *County of Norfolk*, 186 Mass. 133, distinguished. KNOWLTON, C. J. dissenting.

A board of county commissioners has power to amend its records in accordance with the truth.

FORTY PETITIONS against the town of Wellesley and the county of Norfolk for the assessment of damages for takings. of land and changing of grade for the widening of Worcester Street between its termini in the town of Wellesley.

In the Superior Court the cases were heard by *Aiken*, C. J. solely to determine which of the respondents was liable for the damages resulting from the orders of the county commissioners in regard to Worcester Street and the acts done under those orders. The chief justice ruled that the town of Wellesley was. liable, and ordered that the petitions be dismissed as to the county of Norfolk and that the cases stand for further proceedings against the town of Wellesley.

At the request of all the parties, he reported the cases for determination by this court. If the ruling was correct, the cases were to be remanded to the Superior Court for further proceedings against the town of Wellesley. If the ruling was erroneous, such orders and decrees were to be entered as law and justice might require.

The chief justice reported the foregoing ruling as an interlocutory finding or order within the meaning of R. L. c. 173, § 105, which in his opinion ought to be determined by this court before any further proceedings in the trial court.

The case was argued at the bar in March, 1905, before *Knowlton*, C. J., *Morton, Lathrop, Hammond,* & *Braley,* JJ., and afterwards was submitted on briefs to all the justices except *Sheldon,* J., who had been appointed but had not taken his seat upon the bench.

*H. V. Cunningham,* for Mary T. Bennett and another.

*G. Edmunds,* for Sarah S. McLeod and others.

*C. A. Bunker,* for Mary J. W. Overholser and others.

*R. A. Jackson,* for Harriet Gray.

*N. S. Kelly,* for George Goodyear and others.

*F. H. Stevens,* for Donald Carmichael and others.

*V. J. Loring,* (*C. S. Quinn* with him,) for the town of Wellesley.

*C. F. Jenney,* for the county of Norfolk.

HAMMOND, J.   The only question is whether in passing the decree ordering the changes in Worcester Street the county commissioners were acting under the first section of R. L. c. 48, or under the twelfth section.   If under the first, the land damages must be paid by the county ; if under the twelfth, by the town, as ordered.   This question arose in *Livermore* v. *County of Norfolk,* 186 Mass. 133, upon a demurrer to a petition for damages for land taken under this same decree ; and upon the case as there presented it was held that the decree was made under the first section.   But no part of the record as such was before the court, and the petition contained only a very incomplete statement of it.   In giving the opinion Knowlton, C. J. said: "From the recitals in the petition for assessment of damages, which are all that is before us to show the details of the proceedings, it is not plain beyond the possibility of question whether the commissioners were acting under the R. L. c. 48, § 1, and making an alteration of the highway, or under the R. L. c. 48, § 12, and merely relocating it."   It was held that the recitals in the petition showed an alteration of the highway, under R. L. c. 48, § 1, rather than a mere relocation under § 12.   In these cases now before us we have the whole record of the county commissioners as it stood both before and after amendment, and also the circumstances under which the petition for the change was presented.   It is plain, therefore, that the decision made in the Livermore case does not relieve us from the duty of examining the question as now presented, and that the decision there reached is not conclusive in these cases.

On January 17, 1902, the selectmen of the town of Wellesley granted to the Boston and Worcester Street Railway Company a location for its tracks through Worcester Street, upon certain conditions.   In this grant it was provided that at the expense of the company Worcester Street should " be located or relocated and widened as the county commissioners of Norfolk County

shall, in consequence of a petition therefor, decree, . . . as follows." Then follows a statement of the proposed width in feet. There is a further provision that the "tracks . . . shall be located within a reserved space of twenty-five feet in width and in the centre of and along" the street, "as located, or relocated and widened," to the width thereinbefore named. It is further provided that the company shall secure from every abutter on the street a "good and sufficient release of all lands necessary for the location or relocation and widening" of the street, "as shall be determined by the county commissioners of Norfolk County, . . . in accordance with a petition therefor, or shall sufficiently indemnify said town from all damages which may be recovered or paid by said town in consequence of the taking of land . . . for the widening of said street"; and shall "pay all expenses of widening" the street, "including all land damages." It was further provided that "this location is granted only on the express condition that said Worcester Street shall be widened as aforesaid, and at the expense of said" company, "and shall apply to and be valid only in said Worcester Street located and relocated and widened and constructed as herein provided"; and also that "no track shall be laid in any portion of said street that is not located or relocated and widened and constructed as aforesaid." In the grant was set out a copy of the bond to be required of the company. One of the conditions of the bond was that the company should "pay all expenses of the location or relocation and widening" of the street to the extent thereinbefore indicated in the grant; another, that the company should secure from the abutters a release of the land "necessary for the location or relocation and widening," or should pay all damages which should be recovered and paid by the town, and also all expenses of the "location or relocation and widening" of the street. Throughout the whole grant the word "alteration" is not used with reference to the contemplated changes in Worcester Street. The expression uniformly used is "location or relocation and widening."

It appears in the amendment to the records of the county commissioners that at the time of this grant "the boundary lines of said Worcester Street were uncertain and in doubt and dis-

pute, that the bounds thereof cannot be determined, that in portions thereof . . . no bounds or monuments of any kind can be found, nor can the boundaries be made certain by records or otherwise, and that numerous encroachments have been made thereon by walls, fences and buildings," as therein more fully set forth. The street ran from east to west through the town, and evidently was an old and important street. It is plain that the idea of the selectmen was that the street as it existed should be widened if the tracks of the street railway company were to be located therein, and that the time was opportune to have the street relocated and the encroachments upon the original location removed. The physical changes desired were in a sense an alteration, and could have been made by a petition under either the first section or the twelfth section of R. L. c. 48. If made under the first section, the land damages would be paid by the county. R. L. c. 48, §§ 1, 52. If made under the twelfth section, the commissioners could order that the expenses including land damages should be paid either by the abutters, or the petitioners, or the town or county. It is evident that the selectmen desired and intended that these changes should be made eventually at the expense of the street railway company, and one of the conditions of the grant was that the company should indemnify the town for all expense, including land damages.

In this state of things the petition for the changes in Worcester Street, signed by eleven persons describing themselves as " citizens of the town of Wellesley," was presented to the county commissioners. It represented that " common convenience and necessity " required " the alteration of Worcester Street, . . . by the widening, straightening and relocation of said Worcester Street," and that said widening was " rendered necessary for the public convenience for the purpose of granting a location of the tracks of the " street railway company; and the prayer was that the street might be " altered by widening, straightening and relocating the same so that the width " should be as therein particularly set forth, and for further meet and proper proceedings. A recognizance as prescribed in R. L. c. 48, § 2, was taken, the petition being described as a petition for the " alteration " of Worcester Street.

The record of the commissioners sets forth that after due notice they adjudged that common convenience and necessity required that the street be " widened, straightened and relocated " as prayed for, and that they " do so widen, straighten and relocate anew said Worcester Street." Then follows this language: " And the said location anew and widening of said Worcester Street is as follows: Said Worcester Street is relocated and widened, and the grade thereof established as shown on " certain plans. The northerly side line of the street " as relocated and widened," is then set out in great detail. The southerly side line as " located or relocated and widened," is then set out. Then comes the statement that " the lines of this relocation and widening . . . are shown " upon a certain plan called a plan of the " relocation, widening and established grade " of Worcester Street. The decree then provides that the inhabitants of the town of Wellesley, " in which said way is located," shall complete the way, and that " said way as relocated and widened . . . shall be constructed in accordance with the restrictions, stipulations and conditions contained in the order of location granted " by the selectmen of the town of Wellesley on petition of the Boston and Worcester Street Railway Company on January 17, 1902. It is then provided that " all the expenses of making the location anew and widening prescribed in this return, including the expenses of constructing said way, and all land or other damages and expenses incident thereto be paid by the inhabitants of the town of Wellesley." Nowhere in the record except in the copy of the petition are the changes described as an alteration. Even the adjudication of common convenience and necessity does not use that word. The words are " widened, straightened and relocated," and throughout the whole record the word " relocated" is retained. Thus far we have spoken only of the record as it originally stood, and in view of its language and the final order that the expenses should be paid by the town, it appears reasonably clear that the commissioners construed the petition as asking for a relocation under the twelfth section of the statute, and not for an alteration under the first section, and acted accordingly.

Even if the record as it originally stood can be said to have left uncertain the interpretation given to the petition by the

commissioners, the record as amended places the matter beyond the possibility of doubt.   In the record as amended it is recited that it appeared at the hearing that the boundary lines of Worcester Street were uncertain and in dispute; that the bounds could not be determined; that in portions thereof no bounds or monuments of any kind could be found; that the boundaries could not be made certain by records or otherwise; and that numerous encroachments in the nature of walls, fences and buildings had been made upon the street, and it is stated that the abutting owners claimed that by reason of the maintenance of said encroachments for many years "they have, under Gen. Sts. c. 46, § 1, Pub. Sts. c. 54, § 1, and R. L. c. 53, § 1, acquired title to the land and the right to permanently continue said encroachments, while in behalf of said town . . . it is claimed that the length of time and other circumstances of said encroachments are not sufficient to establish said claims." The amended record also recites those parts of the order of the selectmen granting the location of the tracks of the street railway company which refer to the "relocation and widening" of the street.   It contains also the explicit statement that in acting under the petition the commissioners acted "wholly under the authority given to them in and by said Section 12 of Chapter 48 of the Revised Laws and under no other authority or statute whatsoever."

Here then was a public street whose bounds by reason of encroachments and other causes were uncertain and in dispute. There was a proposition to devote a part of it to the tracks of a street railway, and such additional use of the street rendered it desirable that its width should be increased.   Two things were to be done, namely, to relocate and to widen.   The twelfth section of the statute gives jurisdiction to the county commissioners upon the petition of a town or five inhabitants thereof to "relocate a way within such town . . . either for the purpose of establishing the boundary lines of such way or of making alterations in the course or width thereof."   Here then was presented a typical case for action under this section.   That the selectmen who granted the location and who are the first three signers to the petition to the county commissioners supposed that the action would be taken under the twelfth section appears

quite clear from the language of the grant, and especially from the fact that they insisted upon a bond from the street railway company conditioned for the payment of all land damages which might be "recovered and paid by the town." If the changes were to be made under the twelfth section, there was occasion for such a provision, but not if made under the first section, for in that case the land damages would be paid by the county.

As we have seen, the commissioners acted in accordance with the same view. They interpreted the petition as requesting action under the twelfth section, and they intended to act and supposed they were acting solely under its authority, and all proceedings are consistent with that view; and one part of the decree, namely, that part which imposes upon the town of Wellesley the burden of paying the land damages is inconsistent with any other.

The board of county commissioners has power to amend its records according to the truth. *Gloucester* v. *County Commissioners,* 116 Mass. 579, and cases cited. The amendments are in harmony with all the proceedings, and especially with the order as to land damages, and were properly made. But the question whether the commissioners did act under the twelfth section is not determined by their intention alone. They acted under the petition. If under the circumstances it can be fairly regarded as a petition under the twelfth section, then the commissioners had the right to use the powers vested in them by that section, but if it must be regarded as a petition under the first section, then the commissioners could exercise only the powers granted them under such a petition. And the amendments so far as they show an intention to act under powers not fairly arising upon the petition would be of no avail. *Warren* v. *Street Commissioners,* 183 Mass. 119.

The petition sets forth that common convenience and necessity require the "alteration" of the street by the "widening, straightening and relocation" of it, and prays that it may be "altered by widening, straightening and relocating." If the word "alteration" was used in its technical sense, there was no need of the other words, such as "widening" or "relocation." These two words more aptly describe a case under the twelfth section. The presence or absence of one word is not

always conclusive as to the character of the petition. In *Bliss* v. *Deerfield*, 13 Pick. 102, 106, where the petition prayed for "alterations" in a road, Shaw, C. J. said that it was very doubtful whether the word "alteration" was used technically. And in *Watertown* v. *County Commissioners*, 176 Mass. 22, it was held that under the peculiar circumstances of the case, a petition representing that certain streets "are uncertain in their boundaries, of insufficient width and in need of relocation, widening and general revision," and asking that they may "be relocated or located anew, widened and straightened," the proceedings of the county commissioners were under the first section of the statute although the word "alteration" was not used in the petition.

The commissioners in the present case interpreted the petition as calling for action under the twelfth section of the statute. In view of the situation of the street, the changes which the petitioners sought and the reasons for the changes, the language of the order granting the location for the railway tracks, the manifest expectation of some at least of the petitioners that some, if not all, of the land damages would be assessed upon the town, and of the language of the petition, we are of opinion that the word "alteration" is not used in the technical sense of the first section of the statute, but is intended to indicate in a general way the effect of the relocating of the street and of the changes in width which are to be made under the twelfth section; and that in construing the petition as one presented under this section the commissioners committed no error in law. In the opinion of a majority of the court the ruling of the chief justice of the Superior Court was correct. In accordance with the terms of the report the cases are to stand for further proceedings in that court, and it is

*So ordered.*

KNOWLTON, C. J. In this case a majority of the court have agreed upon a decision which seems to me erroneous. Much as I dislike to put upon record an expression of dissent when I differ from a majority of the justices, I think in this case it is my duty to do so. If the opinion agreed to were to pass without judicial comment, it seems to me it would

tend to unsettle the law, and throw the public authorities, dealing with highways, into confusion.

Section 1 of R. L. c. 48, provides for the alteration of old highways, as well as for the location of new ones. Section 12 of the same chapter provides for the relocation of ways. Every alteration of a highway, if it involves a widening or other change of lines, includes also a relocation of it. Every relocation of a highway, if it includes, as it may, a change in the boundaries, is a change, or, in the general sense of the word, an alteration of the way. But an alteration of a highway within the meaning of the word in the first section is not a relocation of it within the meaning of the twelfth section; and a relocation under the twelfth section is not an alteration within the meaning of the first section. In the case of a relocation, the county commissioners may, if they choose, require all the expense to be paid by the petitioners, or they may compel the abutters to pay the whole of it. R. L. c. 48, § 52. In the case of an alteration they can do neither of these things; but all the expenses except land damages must be paid by the county, or the town, as the county commissioners order. R. L. c. 48, §§ 52, 54, 56. In the case of an alteration there may be an assessment of betterments, under the R. L. c. 50, upon estates benefited. In the case of a relocation there can be no such assessment of betterments. *Tufts* v. *Mayor & Aldermen of Somerville,* 122 Mass. 273. The differences in the jurisdiction of the county commissioners and in the rights and liabilities of petitioners and landowners, in the two classes of cases, make it plain that the two sections cannot be used interchangeably to accomplish the same thing, at the election of the petitioners, or at the election of the county commissioners. If what is asked for is an alteration, within the meaning of § 1, the proceedings must be under that section; and if what is desired is a relocation, within the meaning of § 12, the proceedings must be under that section, and not under § 1.

What, then, is the difference between the two classes of cases to which the two sections, respectively, apply? There is, and must necessarily be, a plain line of distinction between them, even though the decisions have not stated exactly how

this line should be drawn. See *Watertown* v. *County Commissioners*, 176 Mass. 22; *Tufts* v. *Mayor & Aldermen of Somerville*, 122 Mass. 273. First, we look at the words used to describe the things meant. In the first section the word is "alteration," and nothing more. In the twelfth we have, "to relocate a way within such town . . . for the purpose of establishing the boundary lines of such way or of making alterations in the course or width thereof." The substance of the proceeding is in one case an alteration, and in the other a relocation. While a statutory alteration will usually include a relocation in a general sense, and a statutory relocation may include some alteration in a general sense, the character and principal purpose of the proceeding, in each case, is indicated by the word used in the statute to designate it. The word "relocate," without addition or qualification, means to locate again, and implies a preservation of the identity of the way, without material change. A relocation for the first purpose mentioned in the statute is exactly this; and a relocation for the second purpose, while it permits some change in course and width, is, after all, in its substantive features, a relocation, as distinguished from an alteration. It has repeatedly been said, in the decisions, that the main purpose of locating anew, or relocating, is to establish the boundary lines of a road which are in doubt or dispute. *Tufts* v. *Mayor & Aldermen of Somerville*, 122 Mass. 273, 275. *Watertown* v. *County Commissioners*, 176 Mass. 22, 29. Relocating is not intended to be used as a method of making important changes in a way. By the express terms of the statute, it can only be done when the whole road to be relocated is in a single town. The fact that the statute gives the county commissioners power to assess the whole expense upon the petitioners implies that it is intended for cases in which the expense will be very small. It is not expected, when important changes are desired for the benefit of the public, that they will be made under a statute which holds the petitioners liable for the payment of the whole expense. The fact that, under the twelfth section, the county commissioners may compel the abutters to pay all the expenses of the relocation, tends to show that this section was not intended to apply when important and expensive changes are

asked· for. The principle under which it is held that the cost
of sewers and other public works cannot constitutionally be
collected from the owners of abutting estates, except to the
amount of the benefits conferred, is applicable to improvements
in public ways, and to the provisions of this section. *White* v.
*Gove,* 183 Mass. 333, and cases cited.

The language of these two sections, with the various accom-
panying provisions, indicates the line of distinction between the
different classes of cases to which they respectively apply. The
first is applicable in every case of an " alteration," that is, of an
important change in any of the essential features of the way,
such as largely to affect its appearance or character, or fitness
for use in any kind of public travel. The second is applicable
in every case where a mere relocation is desired, without a
change of boundaries, or with only such slight changes in the
course or width, or otherwise, as falls short of constituting an
alteration, within the meaning of § 1, and as do not affect,
in a material and important way, the condition or character
of the road, either in its physical features, or in its adaptedness
to the uses of the public. It seems to me that this is very
nearly, if not quite, an accurate statement of the difference
between a statutory alteration of a way and a statutory reloca-
tion of a way. I know of nothing in the statutes or decisions
which is inconsistent with this view, and I do not see any
reason for establishing a materially different line·of distinction.

The jurisdiction of the county commissioners, to act under one
section or the other, is determined by the language of the peti-
tion, interpreted in its application to the way referred to. If
a petition plainly calls for an alteration, within the meaning of
§ 1, the commissioners have no jurisdiction to act upon it under
§ 12; and if it plainly calls for a relocation, within the mean-
ing of § 12, they have no jurisdiction to proceed under § 1.
Their purpose or intention cannot give them jurisdiction which
is not conferred by the petition, nor change a proceeding which
belongs under one section to a proceeding under the other
section.

The petition in this case represents " that common convenience
and necessity require the alteration of Worcester Street, in said
town, formerly known as the Worcester Turnpike, by the widen-

ing, straightening and relocation of said Worcester Street, . . . and that said widening is rendered necessary for the public convenience for the purpose of granting a location of the tracks of the Boston and Worcester Street railway therein." The petitioners then pray that the street "may be altered by widening, straightening and relocating the same so that the width of said street shall be as follows," etc. They then state the widths desired through the town, which are given at seventy-five feet through a large portion of the distance, and at not less than seventy-five feet in other parts, and at sixty-six feet or not less than sixty-six feet through the remainder of the course. They then ask for such further proceedings as the commissioners deem proper.

The petition calls for a very substantial widening through a large part of the town. It was a matter of public record and common knowledge, when the petition was filed, that the selectmen had granted the street railway company a location only on condition that there should be a substantial widening, with great changes in the construction of the way, such as to leave a reserved space in the centre of sufficient width for a street railway with a double track, and to provide a wrought way for travel by ordinary vehicles on the side of the road, with wrought portions at intervals across the tracks, and a sidewalk for persons travelling on foot. The petition for alteration refers in terms to this purpose of the widening, and impliedly suggests that the alteration shall be ordered in accordance with the requirements of the previous grant to the street railway company. The county commissioners interpreted the petition correctly in reference to the nature and extent of the changes asked for, and made an order accordingly, prescribing lines and construction and changes, of which the record before us fills ten closely printed quarto pages. There is also an addition to the record, by way of amendment, which fills five pages more.

The petition in terms calls for an "alteration." It then specifies the particulars in which the alteration is to be made, namely, "by widening, straightening," etc., so as to meet the requirements of public convenience and necessity for the use of the way in connection with the construction and use of a street railway. There is nothing in these particulars that tends to limit the effect of the word "alteration"; but, on the contrary,

when taken in connection with the previous conditional grant to the street railway company, they show that the alteration prayed for is one that will change the whole character of the way from one end of the town to the other. Presumably, the changes ordered, and completed by construction, constitute by far the most important and costly alteration of a way that ever has been made in the history of the town. The words, "widen, straighten and relocate," which appear in the record of the county commissioners, do not tend to show that this was not an alteration, within the meaning of § 1; for a widening to such an extent, and for such a purpose, with a straightening, is an alteration, as distinguished from a relocation under § 12, and when there is such an alteration by widening and straightening, a relocation, in the general sense of the word, is necessarily involved, and may, without impropriety, be included in the statement. No one has ever contended, so far as I know, that a change of either of the termini of a way, or a change in its general course, is necessary to constitute an alteration of it, within the meaning of this section.

After the decision in *Ahearn* v. *County of Middlesex*, 182 Mass. 518, following *Watertown* v. *County Commissioners*, 176 Mass. 22, the county commissioners filed an amendment of their record, in which they said that they proceeded under R. L. c. 48, § 12. They said nothing else in this amendment that has any bearing upon the question which section of the statute was the foundation of their jurisdiction. So far as they referred to the previous uncertainty in the boundaries of the way, their reference has no tendency to show that the jurisdiction was not under the first section. Very often there is such an uncertainty in cases of alteration under § 1. Moreover, the petition plainly shows that this uncertainty did not move the petitioners to action, and that their animating purpose was to procure an alteration of the road by widening, straightening and new construction, to adapt it to the changed conditions in public travel. We already have seen that the understanding or intention of the commissioners, in regard to their jurisdiction, and their statement in reference to it, cannot give a petition for an alteration under § 1 any effect as a petition for a relocation under § 12, nor subject the petitioners or the abutters to a liability for

expenses, which did not exist under a true interpretation of the petition. The effect of a statement of this kind, made under similar circumstances in proceedings under another statute, was discussed in *Warren* v. *Street Commissioners*, 183 Mass. 119, 122. See also *Haven* v. *County Commissioners*, 155 Mass. 467, 470.

Nor is it of any consequence if the selectmen overlooked the provisions of the statute in regard to the payment of land damages, and supposed that such land damages would be assessed upon the town, when they made their grant of a location to the railway company. The jurisdiction and power of the county commissioners were fixed by the statutes, and by the petition, viewed in reference to the substantive matters in which action was prayed for, and not by any previous mistake or opinion of another tribunal.

It is conceivable that a petition might be made, so ambiguous and doubtful in its meaning as to leave the commissioners uncertain, in applying it to the way, whether substantial and important changes were asked for, such as amount in law to an alteration under § 1, or only a second location, with or without slight changes, such as would be a mere relocation under § 12. In such a case, if the commissioners gave the petition a construction which was not unreasonable, and accordingly ordered changes which would constitute an alteration, or, with a different interpretation of it, ordered a mere relocation with no change, or with only slight changes, their jurisdiction, in either event, would be upheld. But this is not such a case; for in my judgment, the language of the petition, as applied to existing conditions, plainly called for an alteration, and the changes which the commissioners ordered amounted in law to an alteration. If this expensive widening and straightening and new construction of the way, which changed its whole character, was not an alteration, I am at a loss to know what additional change was necessary to make it an alteration.

In my view, the decision of the majority is entirely inconsistent with *Livermore* v. *County of Norfolk*, 186 Mass. 133, which dealt with the proceedings that are now before us. The only doubt felt or expressed in that case grew out of the fact that the original record of the petition and the action upon it were not before the court, but only a recital of what had been done. After

copying the recital in the opinion, this court said, "We are of opinion, for reasons stated at length in *Watertown* v. *County Commissioners*, 176 Mass. 22, that this description shows an alteration of the highway rather than a mere relocation of it, and that therefore the damages for the land taken are to be paid by the county." It now appears, from the record before us, that the description in the recital was absolutely accurate, being given in the exact words of the petition on which the jurisdiction of the county commissioners was founded, and of the substantive part of the order of the commissioners thereon. This seems to me to make the decision cover this case, beyond the possibility of question. All the additional provisions of the record seem to me only to emphasize the fact that what the petitioners asked for, and what the commissioners ordered, was an alteration of the way, as distinguished from a statutory relocation of it.

The grant of location by the selectmen to the street railway company, in different parts and in varying language, required the street railway company to pay all the expenses of changes to be made in the way. The acceptance of this grant, and the giving of a bond in accordance with its requirement, and the subsequent action of the county commissioners in ordering the changes, made it the legal as well as the moral duty of the railway company to pay the land damages and the other expenses. The assessment of these damages upon the county, instead of upon the town, would open to the railway company a possible question for defence against a claim for the payment of them under one part of the bond. Other provisions in the bond and in the grant of location, including the stipulation for the payment of all the expenses by the railway company, would not be affected by such an assessment. Whether the company could escape liability for the payment is a question which is not before us. Without intimating that it could, I think the decision of this case should not be affected by any view that may be taken of this question.